(58 N. W. Rep. 460.)

SAMUEL D. FLAGG *vs.* SCHOOL DISTRICT, No. 70.

Opinion filed March 19th, 1894.

### Municipal Bonds—Provision for Exchange Destroys Negotiability.

An instrument providing for the payment of exchange on a point other than the place of payment, in addition to principal and interest, is not a negotiable instrument; and one who purchases the same before maturity, for value, and without notice of any defense thereto, nevertheless takes it subject to the defense of want of consideration good as between the original parties to the instrument.

WALLIN, J., dissenting.

### Certificate of Proper Officer—Evidence of Validity.

Defendant was authorized to issue bonds to fund its outstanding indebtedness in case certain statutory prerequisites were complied with. A record of the proceedings culminating in the decision to issue bonds was to be made in the district, and a certified copy thereof was to be filed with the county clerk, and preserved as a record in his office. It was made the duty of the county clerk to examine such record in his office, and if satisfied, from such examination, that all the requisites of the act with respect to the preliminary proceedings had been complied with, and that the bonds were authorized to be issued as provided for in the act, he was to register the bonds, and indorse upon each of them his certificate in the form prescribed in the statute. The bonds in question were so registered and certified. *Held,* that a purchaser of such bonds, for value, before maturity, and without notice that any of the conditions of the statute relating to proceedings to authorize the issue of the bonds had not been complied with, could rely upon the certificate of the county clerk as finally settling all such matters, and that the court below did not err in rejecting defendant's offer to prove that such conditions had not been complied with.

**Bonds Registered and Certified as Legal Under Statute—Not Open to Question in Hands of Bona Fide Purchaser.**

By an amendment to the act, it was provided that no district, in which the title to the school site was not in the school board, should bond its debt until it had obtained such title. But it was declared in such amendment that, after the bonds had been registered and certified, their validity should not be questioned in any tribunal, but should be and remain valid and binding. *Held*, that this provision made it the duty of the county clerk to pass upon this question of title before registering and certifying the bonds, and that, therefore, his decision, evidenced by registering and certifying the bonds, that such condition as to title to the school site had been complied with, was final on the point, as against the district, in favor of one who purchased the bonds in good faith, for value, without notice that this condition had not been complied with.

**Recitals in Non-negotiable Bond.**

The right of a bona fide purchaser of municipal bonds to rely upon a recital or certificate as to facts which the person making the same had authority to determine, does not depend upon the bond being a negotiable instrument. It exists in the case of a bona fide purchaser of a non-negotiable bond as well.

**Want of Consideration Cannot be Shown Against a Bona Fide Purchaser.**

The statute declared that a committee should audit the claims against the district, and determine the amount of indebtedness to be funded. *Held*, that the auditing by the committee of claims against the district, and the vote of the district to bond to pay such claims, and the issue of bonds accordingly, would preclude an inquiry as to the validity of such claims as a consideration for such bonds, as against a bona fide purchaser of such bonds; that, as against such purchaser, the district could not show, to prove a want of consideration between the original parties, that the bonds were in fact paid for by the one to whom they were originally issued by the district; by the surrender of void claims held by him against the district, provided such claims had in fact been audited and canceled, and bonds voted and issued under the provisions of the statute.

CORLISS, J., dissenting.

Appeal from District Court, Barnes County; *Rose,* J.

Action by Samuel D. Flagg against School District, No. 70, Barnes county, to recover interest on bonds. Plaintiff had judgment, and defendant appeals.

Reversed.

*G. K. Andrus,* for appellant.

The stipulation for payment of exchange renders the bonds non-negotiable. § § 4456, 4462, Comp. Laws; *Bank* v. *Bynum,* 84 N. C. 24; *Saxton* v. *Stevenson,* 23 N. P. Can. 503; *Nughitt* v. *Johnson,* 28 Fed. Rep. 865; *Windson Savings Bank* v. *McMahon,* 38

Fed. Rep. 283; *Read* v. *McNalty*, 78 Am. Dec. 467; *Carroll Co. Savings Bank* v. *Strother*, 6 S. E. Rep. 313; *Lowe* v. *Bliss*, 24 Ill. 168.

The purchaser of bonds is chargeable with notice of requirements of law under which they are issued. *Ogden* v. *Daviess Co.*, 102. U. S. 634, 26 Law Ed. 263; *Marsh* v. *Fulton County*, 77 U. S. 10; *Hayes* v. *Halley Springs*, 114, U. S. 120; *First Nat. Bank* v. *Distrtct of Doon*, 53 N. W. Rep. 301.

*Williams, Goodenow & Stanton* and *Ball & Watson*, for respondent.

The defendant is estopped as against a purchaser bona fide from establishing any of the defenses set up in its answer. 1. Dillon Muc. Corp. 523; Burroughs on Pub. Securities 301; *Knox* v. *Aspinwall*, 21 How. 539; *Block* v. *Commissioners*, 99 U. S. 686; *Pompton* v. *Cooper Union*, 101 U. S. 204; *Lynde* v. *County*, 16 Wall. 13; *Bank* v. *Grenada*, 41 Fed. Rep. 87; *Coloma* v. *Eaves*, 92 U. S. 484; *Phelps* v. *Lemston*, 15 Blatchford 132; *Society for Savings* v. *New London*, 29 Conn. 174, 192; *Maddox* v. *Graham*, 2 Metc. (Ky.) 56; *Gulford* v. *Ry. Co.*, 48 Minn. 560; *Donnelly* v. *Cabanio*, 52 Ga. 212; *Lane* v. *Embdon*, 72 Me. 354; *Anderson Co.* v. *Ry. Co.*, 52 Tex. 228.

The provision for exchange does not destroy the negotiability of these bonds. *Bradley* v. *Hill*, 4 Bissell 473; *Leggett* v. *Jones*, 10 Wis. 34; Tiedman on Com. Paper, § 28.

CORLISS, J. Judgment has been recovered and entered in favor of the plaintiff and against the defendant upon interest coupons of certain bonds issued by defendant. The appeal is from such judgment. The court below directed a verdict for the plaintiff, and it was upon this verdict that the judgment was entered.

Among other errors assigned is one based upon the refusal of the trial court to allow the defendant to prove that the bonds in question were issued without consideration. It cannot be doubted that a want of consideration would have constituted a perfect defense to the bonds in the hands of the original taker. But it is urged that the plaintiff is a bona fide holder, for value, before maturity, of the bonds, and their interest coupons. As a matter of fact, this contention of the plaintiff is fully sustained by the

record; but he can derive no protection therefrom unless the bonds or coupons are negotiable instruments, within the rule which entitles the bona fide purchaser of such paper to protection, as against defenses to the same in the hands of the original holder. Are the bonds or the coupons negotiable instruments? If not, we must reverse the judgment, and allow the defendant to make proof, if it can, of its defense of want of consideration. The only provision in the bonds and coupons which it is claimed affects their standing as negotiable instruments is that they shall be paid at St. Paul, Minn., with New York exchange. The rule is familiar to all that the amount to be paid must be certain,— must be ascertainable from the face of the instrument, and from the law which governs the contract. No resort to extrinsic evidence is allowed. Our statute establishes no different rule. "A negotiable instrument is a written promise or request for the payment of a certain sum of money to order or bearer in conformity to the provisions of this article." Section 4456, Comp. Laws. That the provision that the maker, in addition to the sum specified, shall pay an indefinite sum, called "exchange," renders it impossible to ascertain how much money is needed to extinguish the obligation at maturity, without resort to evidence of a fact outside of the paper, cannot admit of a moment's doubt. No court has ever challenged the truth of this proposition. But it is insisted by those courts which uphold the negotiability of instruments embracing such a provision that the amount to be paid is substantially certain; that it can be readily ascertained, as it is fixed by the rate of exchange among bankers the day the paper falls due; that the amount of the exchange is usually very small; and that the spirit of the rule requiring certainty is therefore not violated by this exception to the letter of the rule. Indeed, it is asserted that the provision amounts to no more, in effect, than a requirement that the paper be paid at the place on which exchange is to be paid. The argument is made that, when the maker is called upon to pay exchange on a specified place, he is

really compelled to do no more than pay out the same sum to satisfy the obligation that he would have been forced to pay had it been payable, without exchange, at the place on which the exchange is to be paid. This reasoning is fallacious. There is a marked difference, both to debtor and creditor, with respect to the amount to be paid and received, between cases where the paper is payable at one place, with exchange on another, and cases where the paper is payable, without exchange, at the last named place. Suppose, when the money is payable in this state, the creditor wishes to use the money here. He is doubly benefited by the provision to pay here, with New York exchange. Had the paper been payable in New York, without exchange, he might be compelled to pay exchange on some western point, to bring the money to this state. But by having it paid here he saves this sum, and, in addition, places in his pocket the amount of New York exchange paid him by the debtor. In times of great financial fright, like those through which we have been passing, the difference might be equal to a considerable sum. Nor is the effect the same upon the debtor. Should his money be in New York, he must pay the cost of bringing it west, and also pay the creditor the further cost of sending it back, although the creditor may not desire it remitted, whereas, had the debt been payable in New York, without exchange, he would have saved both of these items of exchange.

But even if it should be conceded that the effect, in dollars and cents, would be the same to both parties, under all circumstances, it would not follow that the courts would be justified in ingrafting this exception upon the law merchant. An agreement to pay a sum of money equivalent to the market price of a specified amount of a certain commodity at a particular time and place is, in its effect upon the parties, the same as an agreement in terms to pay that sum of money. But it would not be seriously urged that the former agreement would constitute a negotiable instrument. It would not be negotiable, because resort would have to be had to extrinsic evidence to settle the amount due, whereas, in

the case where that amount (although precisely the same) is fixed by the terms of the paper, certainty exists upon the very face of the contract itself. It is this certainty which the law merchant requires. To ingraft upon this rule the exception contended for by respondent would be open to serious objections. In analogous cases, there would be no escape from further modification of the doctrine requiring certainty. When once the strict letter of the rule is departed from, the business world is wholly at sea. No one can tell in advance what other anologous provisions, introducing uncertainty into the contract, will be disregarded, as not falling within the spirit of the rule. The spirit of the rule is too vague and intangible for the guidance of business conduct. The commercial world needs, and must have, the certainty of the rule itself, in its plain interpretation. When a departure from its strict letter is once tolerated, the whole subject is removed from the realm of simplicity and certainty, and transferred to the domain of construction, confusion, and doubt. What the business world needs with reference to such matters is not so much a rule based upon principle as a rule simple, definite, and permantley fixed. All these elements will be destroyed by the adoption of the exception that resort may be had to outside evidence to fix the amount of exchange, without affecting the negotiability of the instrument providing for the payment of exchange. And what need is there for an exception? What great benefit will accrue to the commercial world from its adoption? It is said that the business world has practically agreed that the words "with exchange" do not destroy the negotiability of the paper containing them. But it is not within the power of the people to modify or abrogate by usage a settled rule of law. The people must change fixed rules by legislation. It is by no means certain that there is a consensus of opinion on this subject. In the eastern states there will doubtless be found many who would take issue with those who assert that such paper is negotiable. But there is no need for this usage.

The only theory upon which the creditor can justify inserting a

provision for the payment of exchange is that he desires the
money remitted to the point specified, to be used by him there.
To insert a provision for exchange for any other purpose would
be requiring the payment of something which the creditor cannot,
in fairness, exact. All he can justly demand is the principal and
interest. If he is paid more, it is to enable him to remit the
money, or to have it remitted, without expense to himself. In
other words, it is contracted for and received by him that he may
receive in full the amount of principal and interest at the place
on which exchange is paid, without diminution because of being
compelled to pay such exchange himself. The creditor can
always accomplish this purpose by specifying in the contract, as
the place of payment, the place to which he desires the money
remitted. He will still receive the full sum, without deduction
for exchange, as the debtor must pay it there; and the instrument
will not be open to the objection that it is not negotiable, by
reason of the fact that the exact sum to be paid cannot be ascer-
tained without resort to extrinsic evidence. If, as has been
stated, there is a large amount of paper in the market, containing
a provision for the payment of exchange, which is regarded and
is being treated by business men as negotiable paper, those who
so believe and act are not entitled to have the law strained to
protect them, for they must have known that such a provision did
in fact introduce into the contract an element of uncertainty, and
they also were bound to know that many cases treated such paper
as not negotiable. Moreover, most of such paper will be paid or
renewed, or be in some way disposed of, in a few months, and in
transactions entered into subsequently to this decision the people
can conform to the elementary rule that certainty must appear
upon the face of the paper. We are asked to protect the few
holders of such paper to which there may be some defense good
as between the original parties. That we may do this, we are
requested to take from the rule that which, above all other
elements, renders it beneficial to the commercial world,—its
simplicity and certainty. It is said that the amount of exchange

is very small. But the amount is uncertain, within the meaning of the rule, whether a dime or a dollar is to be added to the sum by extrinsic proof. If the amount of the exchange is to determine the negotiability of paper containing provision for exchange, some of it would, and some of it would not, be negotiable, for there are times when the amount of exchange is much more than nominal. To escape such a dilemma the courts must hold that where the uncertain sum to be so added is equivalent to many dollars, as was frequently the case during the past summer, the paper is nevertheless negotiable, within the rule which requires certainty upon the face of the paper as to the amount to be paid. Many cases support the view expressed in this opinion. *Bank* v. *McMahon,* 38 Fed. 283; *Lowe* v. *Bliss,* 24 Ill. 168; *Hughitt* v. *Johnson,* 28 Fed. 865; *Read* v. *McNulty,* 12 Rich. Law, 445; *Bank* v. *Strother,* 28 S. C. 504, 6 S. E. 313; *Palmer* v. *Fahnestock,* 9 U. C. C. P. 172; *Saxton* v. *Stevenson,* 23 U. C. C. P. 503; *Bank* v. *Bynum,* 84 N. C. 24; *Bank* v. *Newkirk,* 2 Miles, 442; *Russell* v. *Russell,* 1 McArthur, 263; *Fitzharris* v. *Leggatt,* 10 Mo. App. 529; *Bank* v. *Goode,* 44 Mo. App. 129; *Caset* v. *Kirk,* 4 Allen (N. B.) 543; *Nash* v. *Gibbon,* Id. 479. An agreement to pay the principal sum and interest, and in addition the cost of sending the money to New York by express, would have been more definite, because those charges remained fixed for a long period, and there would have been certainty from the outset how much money it would take to pay the debt. But, as exchange may vary from day to day, the amount to be paid therefor is uncertain, down to the very day of payment. Yet no one would contend that an instrument containing a provision for the payment of the cost of sending the money to New York by express would be negotiable. While it would have been practically certain from the start how much money it would take to comply with the contract, the certainty would have resulted, not from an inspection of the contract alone, but from the evidence of an extrinsic fact, not liable to· change, which however, must be proved, the same as any other extrinsic fact, by evidence outside of the paper. An agreement to pay exchange

between points in this country, where the money standard is the same throughout, is only an agreement to pay for the cheaper mode of remitting funds, resulting from the more refined and complex system under which financial transactions are carried on.

We are aware that there are decisions opposed to our view. In Michigan it was held by a divided court that such instruments are negotiable. *Smith* v. *Kendall*, 9 Mich. 242. The dissenting opinion of Judge Campbell is much more satisfactory to our minds than the prevailing opinion. In the latter case of *Johnson*, v. *Frisbie*, 15 Mich. 286, it is evident that the judges did not intend to express their views upon the question, as an original one, both from the language of the opinion in that case, and from the fact that Judge Campbell, who had so strongly dissented in the first case, wrote the opinion in the second. This opinion merely states .that the law was settled by a majority of the court in the prior case, and we have therefore no means of ascertaining from the case of *Johnson* v. *Frisbie* what Judge Cooley's views were on the question, looking at it from the standpoint of principle and business expediency. In a late case in that state (*Bank* v. *Purdy*, 22 N. W. 93,) that court has held a note to be non-negotiable which contains a provision for exchange in connection with a provision for the payment of expenses of collecting if sued upon, and further provisions waiving exemptions, and increasing the rate of interest, if not paid at maturity. These three last named provisions have been held by many authorities (although there is conflict) not to destroy the negotiability of instruments containing them. The case therefore, may,—and in some jurisdictions must,— have turned on the question whether the provision for the payment of exchange destroyed its negotiability. The court said: "The modern tendency to interpolate into such instruments engagements and stipulations not recognized by the law merchant, affecting the certainty as to the amount due and payable thereon, or the time of maturity, or superadding duties to be performed by the maker of additional obligations, other than the payment of a sum certain at. maturity, should be discountenanced, and held to destroy

their negotiability, and deprive them of the character of promissory notes, and they should be relegated to the domain of ordinary contracts." In neither of the Wisconsin cases was the question involved. In the later case of *Morgan* v. *Edwards*, 53 Wis. 599, 11 N. W. 21, there is a statement that what was said by the court in the former case (*Leggett* v. *Jones*, 10 Wis. 35) on the point was obiter; and while the court, in the later case, reiterates the former dictum in even stronger language, it is nevertheless the fact that in neither case did the court settle the question authoritatively, as one necessarily involved. In *Bradley* v. *Lill*, 4 Biss. 473, Fed. Cas. No. 1,738, the reasoning of the learned judge is clearly unsound. The opinion exemplifies the truth of the common observation that the use of an illustration is often a dangerous mode of enforcing a point. He likens the case of a note payable with exchange to one payable, with interest, in England, and sued on in New York. He asserts that in the latter case the note would be negotiable. But the court, he says, must, in such case, take proof of an extrinsic fact to fix the amount of interest. The answer to this sophistry lies so plainly on the surface that it is hardly necessary to state it here. The note, in the case put by way of illustration, is negotiable because in England, where it is payable, the amount of interest is ascertainable by an inspection of the note itself. Nothing is uncertain or extrinsic, which the note and the law disclose and establish. The suit being brought, in the case put by way of illustration, in a foreign country, the court must have proof of the laws of the country where the note was payable, to ascertain the rate of interest, because such laws are not judicially noticed; but when the proof is made the court ascertains the amount due, from the face of the note and the terms of the statute, without further evidence. And in England, by whose laws the rate of interest is fixed, and where the note was payable, there has at all times been an absolute certainty as to the amount needed to pay the note at maturity. The test is whether the amount due is certain from the face of the paper at the time and place of payment. Suing

on the instrument in a foreign country cannot destroy its negotiability. The only discussion of this question, in favor of the view that such paper is negotiable, which is worthy of that name, is to be found in the opinion of Judge Mitchell in *Hastings* v. *Thompson* (Minn.) 55 N. W. 968. It embodies all that can be said on that side of the question. It is a position not utterly destitute of strength, but, for the reasons we have already stated, we do not regard it as tenable. It is to be regretted that the Federal Supreme Court has not passed upon the point. There should be only one rule for the nation, and it is to be hoped that, whatever conclusion is ultimately reached by that court, it will be adopted in all of the states. In this circuit it is settled by the decision of Judge (now Mr. Justice) Brewer, in the case of *Hughitt* v. *Johnson*, 28 Fed. 865, that such paper is not negotiable. Had this suit been instituted in the United States Circuit Court for this district, that court would have applied and enforced this rule. Therefore, for us to establish a different doctrine would make the rights of the parties depend upon the court in which the action should be brought. While the decision which we have cited from Pennsylvania (*Bank* v. *Newkirk*, 2 Miles, 442) is a decision of the District Court, it is quite evident what views the Supreme Court of the state would entertain on the question, should it come before that tribunal. In *Woods* v. *North*, 84 Pa. St. 407, that court said that "it was necessary quality of negotiable paper that it should be simple, certain, unconditional,—not subject to any contingency. It would be a mere affectation of learning to cite the elementary treatises and the decided cases which have established this principle. It is very important to the commercial community that it should be maintained with all its rigor." In a recent case in the same court this language is quoted with approval. *Bank* v. *McCord*, 139 Pa. St. 52, 21 Atl. 143.

A majority of this court holds that the bonds and coupons were not negotiable, and were therefore open to the defense of want of consideration. Hence, it was error for the court to exclude the evidence offered to substantiate this defense. The

chief justice, who agrees with me, rests his decision upon the terms of our statute. Comp. Laws, § § 4456, 4462.

It is claimed that the court erred in another particular: The defendant offered to prove that the land on which the school building for which the bonds in suit were issued was situated was not owned by the defendant, or its school board; that it had never been conveyed to the district, or its school board; that proceedings to condemn it as a school site had never been instituted; and that it was, in fact, the property of a third person. This offer was rejected. Would these facts have constituted a defense? The act under which defendant derived its authority to execute bonds is a special act, and is not to be found in the printed volumes. It was approved March 12th, 1885. On the same day the act was amended, and in this amendment it was expressly provided that the indebtedness of .no school district mentioned in the original act should be bonded until the land on which the school building was located should have been conveyed, by good and sufficient warranty deed, to the school board of such district, or the title to it should have been obtained by the school board by proper condemnation in the manner provided by law. The existence of this fact of ownership of the site on which the school building was situated was a condition precedent to the existence of any power to issue bonds.

The only possible escape of the plaintiff from this conclusion is by invoking another doctrine,—the doctrine of estoppel from recitals in the bond, or in a certificate attached to it. Upon each bond was indorsed a certificate signed by the county clerk certifying that such bond "is issued in accordance with law, and by authority of a majority of the legal voters of said district present and voting at an election duly held May 11th, 1885, for that purpose, and is duly registered in this office." We will assume at first that this certificate is in terms broad enough to embrace the fact that the title to the school site was in the school board. The question then arises whether this fact is such a fact as the county clerk had authority to investigate, and settle by his

certificate, so as to preclude an inquiry with respect to the same, as against a bona fide purchaser of the bonds. This doctrine rests upon legislative intent. Did the legislature intend to commit the determination of certain facts to the judgment of the officer making the certificate, or the officers issuing the bonds, where the facts are recited in the body of the bond, so that purchasers of such bonds might rely upon such certificate or recital? As we said in *Coler* v. *School Tp.*, 55 N. W. 587, 591. "It is not necessary that the power to determine these facts should have have been expressly conferred upon the district officers by statute." And in that connection we added in that case (quoting with approval) the language of Mr. Justice Brewer in *Inhabitants* v. *Morrison*, 133 U. S. 523, 10 Sup. Ct. 333: "It is enough that full control in the matter is given to the officers named." We stand by this statement of the rule, but the language of § 6 does not bring this case within its purview. The county clerk derives his power to make the certificate upon the bonds from § 6 of the statute. But, as a consideration of § 5 is essential to a right understanding of § 6, we quote them both in full:

"Section 5. No bond shall be issued under this act until the question of issuing the same shall be first submitted to a vote of the district at a school meeting called for that purpose of which school meeting at least ten day's notice shall be given by notices posted in at least three public and conspicuous places in said districts, stating the time and place of meeting and that the said meeting is for the purpose of auditing and settling the indebtedness of said district and issuing bonds to provide for the payment thereof. The notice of such meeting may be signed by any member of the school board or in case of the absence of all the members of the school board or their inability, refusal or neglect to sign the same, by three resident electors of such district; provided that no meeting shall be called for such purpose until the district school board shall have been petitioned therefor in writing by at least one-third of the resident electors; a majority of the legal voters present and voting at such meeting shall first

appoint a committee of three from their number, resident free-holders and possessing other qualifications of electors of the district to audit and settle the indebtedness of the district. Said committee shall at once cause notice to be given of their appointment, and shall in said notice set a time during which the outstanding indebtedness shall be presented to them. Said time shall not be less than thirty days nor more than ninety days, and said notice shall be published in some newspaper of general circulation published in each of the counties of Barnes and Griggs and shall also set forth the time when the committee will make a full report of their duties to the electors of such district, whereupon the electors shall meet at such time and place to receive said report and submit the question of the issuing of bonds to provide for the payment of the indebtedness as audited and settled, and the auditing or settling by said committee shall not be in any manner construed to be binding on said district or be construed as an admission of the legality of any claim or alleged claim against said district and no bonds shall be issued until the claims for which they are issued shall be delivered up and cancelled, and a full record shall be kept of all of the proceedings of said meeting, and the acts of said committee and of the vote cast in the names of all of the persons who voted at said meeting and shall be preserved as a record in the district, and a certified copy of such record shall be filed with the county clerk which shall be kept in his office as a public record. The ballots in favor of or opposed thereto shall contain the words respectively 'For issuing bonds' and 'Against issuing bonds' and if a majority of all the votes cast be in favor of issuing bonds, the school board shall forthwith proceed to issue bonds to the amount of the indebtedness as audited and settled and running for such length of time as shall be determined by the further vote of the resident voters present within the limits prescribed by this act. Section 6. Before said bonds are issued, sold or disposed of, they shall be presented to the county clerk, and the said county clerk shall carefully examine the notices of election and the proof of posting

or publishing the same, and shall also carefully examine all returns of the election and all proceedings of said committee and of said district meetings, and the settlement, auditing and vote authorizing the issuance of said bonds, which examination shall be made from the records filed in his office, as provided for in the preceding section, and if satisfied therefrom that such bonds are authorized to be isssued, as provided for in this act, and the claims for which they are issued are delivered up and cancelled, he shall, in a book kept for that purpose, preserve a registry of each bond, showing in separate columns and entries, the number of the school districts issuing a bond, the denomination thereof, the date of issue and other facts, and upon each bond shall endorse the following certificate: I hereby certify that the within bond for———dollars of school district number—, ———county, Territory of Dakota, is issued in accordance with law, and by authority of a majority of the legal voters of said district present and voting at an election duly held———, 188—, for that purpose, and is duly registered in this office. The blanks shall be filled according to the fact, and the certificate officially signed by the county clerk and attested by the seal of the county."

It will be noticed that the county clerk is not given full control of the matter by section 6. He is merely to settle the questions whether the provisions of section 5 have been complied with. That he has nothing, under the terms of section 6, to do with the determination of the question whether the school board has title to the school site, is apparent from the fact that that matter is not referred to in section 5; from the further fact that his decision is to be based upon the examination of a certified copy of the record of the proceedings referred to in section 5, which requires such record to be kept; and from the still further fact that, at the time sction 6 was passed, section 15 had not been amended, and therefore the law did not at that time contain any provision requiring the ownership of the school site, as a condition precedent to the power to issue bonds. It is thus made apparent that the county clerk was given no authority over this matter by

section 6; that no decision touching it was committed to his judgment by that section. Under such circumstances, it is too clear to justify further argument that, under the language of section 6, his certificate constitutes no estoppel. The public has no more right to rely upon it, so far as this matter was concerned, than the certificate of any utter stranger. We are not without express authority upon this point. *Coffin* v. *Board*, 57 Fed. 143; *German Bank* v. *Franklin Co.*, 128 U. S. 526, 540, 9 Sup. Ct. 159; *Lake Co.* v. *Graham*, 130 U. S. 674, 9 Sup. Ct. 654; *Northern Nat. Bank* v. *Porter Tp.*, 110 U. S. 608, 4 Sup. Ct. 254; *Kelley* v. *Town of Milan*, 21 Fed. 842; *National Bank of Commerce* v. *Town of Granada*, 4 C. C. A. 212, 54 Fed. 100; *McClure* v. *Oxford Tp.*, 94 U. S. 429; *Dixon Co.* v. *Field*, 111 U. S. 83, 4. Sup. Ct. 315; *Brown* v. *Bon Homme Co.*, (S. D.) 46 N. W. 173, 176. In this last case the court said: "There were no recitals in these bonds of the existence of any fact which the chairman and clerk of the board were authorized to ascertain and determine." In *Dixon Co.* v. *Field*, the court said: "If the officers, authorized to issue bonds upon condition are not the appointed tribunal to decide the fact which constitutes the condition, then recital will not be accepted as a substitute for proof. In other words, where the validity of the bonds depends upon an estoppel claimed to arise upon the recital of the instrument,—the question being as to the existence of the power to issue them,—it is necessary to establish that the officers executing the bonds had lawful authority to make the recitals, and to make them conclusive. The very ground of the estoppel is the recitals and the official statements of those to whom the law refers the public for authentic and final information on the subject."

Nor could there have been any hardship in requiring those dealing with the bonds to ascertain whether the district had title to the school site before issuing the bonds. This title, whether under deed or condemnation proceedings, would ordinarily be a matter of public record. We do not think, however, within the meaning of the cases holding that an assessment roll must be

examined despite recitals in the bonds, that the bona fide purchasers of these bonds bought at their peril, if the legislature has given the county clerk authority to determime this question, and embody his decision in his certificate.    These cases relate to facts which are necessarily matters of record:    *Sutliff* v. *Commissioners*, 147 U. S. 230, 13 Sup. Ct. 318; *Lake Co.* v. *Graham*, 130 U. S. 674, 682, 9 Sup. Ct. 654; *Chaffee Co.* v. *Potter*, 142 U. S. 355, 363, 12 Sup. Ct. 216; *Dixon Co.* v. *Field*, 111 U. S. 83, 92, 4 Sup. Ct. 315; *Nesbit* v. *Independent Dist.*, 144 U. S. 610, 12 Sup. Ct. 746; *Francis* v. *Howard Co.*, 50 Fed. 44; *Bank* v. *City of Terrell*, (Tex. Sup.) 14 S. W. 1003; *Nolan Co.* v. *State*, (Tex. Sup.) 17 S. W. 826.  But the title to the school site might be in the school board by an unrecorded deed.

We now come to a provision in the amendment to the act which, in our judgment, requires us to hold that the county clerk's certificate was broad enough to include the fact of title, and that it was the purpose of the legislature to make this certificate final on this point, so far as innocent purchasers were concerned. That amendment, after providing, among other things, that the title must be in the school board before bonds can be issued, declares that "the validity and obligation of any school bond registered and certified as herein provided  *  *  *  shall not be questioned in any tribunal, but every such bond shall be and remain binding." While this does not, in terms, vest in the county clerk the power, or make it his duty, to investigate and determine this question of title, the language can have no effect unless it be so construed. It is not necessary that the power to decide and settle such matters be vested in the officer, in express terms.    Burroughs, Pub. Secur. p. 321; *Coler* v. *School Tp.*, (N. D.) 55 N. W. 587; *Indabitants of Tp., of Bernards* v. *Morrison*, 133 U. S. 523, 10 Sup. Ct. 333. After the bond is registered and certified in the manner prescribed by the statute, this question of title is no longer open to litigation, as against bona fide purchasers.    It was therefore the duty of the county clerk to investigate this matter before registering the bonds and making the certificate.    A threatened violation of this

duty could have been restrained by injunction, and the district protected. This provision clearly gives the county clerk full control over the matter with respect to the question of title, as well as regards the matters specified in sections 5 and 6. Where the statute declares that the validity of a bond shall not be questioned after it has been certified by an officer to have been issued in accordance with law, and that same law provides what is essential to the validity of such bond,—*i. e.* that the district issuing should own its school site,—it does not admit of doubt, in the judgment of the court, that such officer, by necessary implication, is vested with the power to decide such matter, and that it is his duty to decide such matter, before making the certificate. Says Burroughs in his work on Public Securities: "The power of the officer to determine whether such conditions have been complied with need not be expressed; it being deduced from the provisions of the statute, and the supposed necessity of the case, that such questions must be determined before the issue of the bonds." Page 321. That the power to decide questions, and thereby estop the municipality, need not be expressly conferred, is clear from other authorities. Judge Dillon says it is sufficient "if, upon a true construction of the legislative enactment conferring the authority, the corporation, or certain officers or a given tribunal, are invested with power to decide whether the condition precedent has been complied with. 1 Dill. Mun. Corp. 523. In *Town of Coloma* v. *Eaves*, 92 U. S, 484, it is said that the rule of estoppel by recitals applies "where it may be gathered from the legislative enactment that the officers of the municipality were invested with power to decide whether the condition precedent has been complied with." In few, if any, of the cases, has there been an express delegation of the power to decide whether conditions precedent to the exercise of power existed, or had been complied with. "It is not necessary that the power to determine these facts should have been expressly conferred upon the district officers by the statute." *Coler* v. *School Tp.*, (N. D.) 55 N. W. 587, 591. In *Coffin* v. *Board*, 57 Fed. 143, the court said that the

recitals, to estop the municipality, must relate to matters of fact "which it may fairly be presumed that the officers of the municipality were left to determine."

It has been urged that to construe the provisions in the amendment that the bonds shall not be questioned in any tribunal after they have been certified or registered by the county clerk as giving the county clerk authority to settle the question of school site would defeat the amendment. The proposition is not sound. The amendment was made to withhold from a district, which did not own its school site when the act was passed, power to bond its floating indebtedness until it has secured such title. Because the county clerk can decide whether in fact it had such title does not take away this restriction upon its power. The county clerk, it is to be presumed, will do his duty. Ordinarily, this presumption accords with the fact. Here is a complete check upon the illegal issue of bonds. The county clerk, doing his duty, refuses to certify and register the bonds, because the district has no title to the site, and they, therefore, cannot be issued. Will the power to decide this question defeat the amendment, in such a case? Again, suppose the county clerk is corrupt, or is deceived. Have not the taxpayers the right to enjoin the illegal issue of bonds? The style of reasoning which we have been answering would in every case defeat the effect of a recital as an estoppel. The argument would invariably be that to hold that it created an estoppel would abrogate the restrictions upon the power to issue bonds, or sweep away the conditions essential to the existence of such power.

Unless we construe this declaration as relating to the question of title to the school site, it is an idle provision in the statute. If it refers to any such defenses as are shut out by the certificate of the county clerk,—*i. e.* those arising under section 5,—then it is merely declaratory of a settled rule of common law, which would have been just as operative without the declaration as with it. Without this clause, such defenses would have been foreclosed by the county clerk's certificate. Why, then, enact it, if that was

the only purpose in enacting it? That the legislature did not intend to enact a meaningless provision is apparent from the fact that in the act, as it was originally adopted before amended, no such provision is found. It was unnecessary. The common law declared that, as to matters which were expressly intrusted to the clerk for decision, his decision was final. But in the amendment a new condition is introduced. With respect to this the clerk had not already been given authority to determine whether it had been fulfilled. If his certificate was to settle this question as to good faith purchasers, some declaration to that effect would be necessary. The common law rule would not apply, for without such declaration the clerk would have no power to decide this question. Hence, if a good faith purchaser was to be protected with respect to this question, it became necessary to declare so in the amendment itself; and what declaration could be more comprehensive than that which makes the certificate of the clerk final as to the validity of the bond? This declaration was not made in the statute, as originally framed and passed, when it could have no effect. It was made for the first time in the amendment, when it could have some effect, *i. e.* the effect we have given it, to foreclose the defense that the district had no title to the school site when the bonds were issued. And yet we are asking to strip it of all significance. We are asked to limit, and further limit, its broad meaning, until it shall mean only what it was unnecessary for the legislature to declare. The construction which we place upon this provision is in harmony with the language in which it is couched. It recognizes that the legislature intended to make a declaration which would have some effect, and it is sustained by the general trend of legislation in such cases, which is almost uniformly in the direction of having all questions as to conditions precedent settled by some officer or tribunal, that a good faith purchaser may rely thereon without being compelled to investigate, at remote points, questions that are more or less difficult of ready solution. It may be true that

N. D. R.—4.

the comprehensive significance of the language of the amendment must have some limitation,—that all defenses will not be foreclosed by the county clerk's certificate. But because the clause must be limited in its meaning is no reason why it should be so limited as to render it an idle provision. It can be restricted in its operation so as not to violate any constitutional provision, and yet be construed to embrace the defense that no title to the school site had vested in the district when the bonds were issued.

It cannot be said that the district was without power to bond until it had acquired title to the school site, in any other sense than it would have been without power to bond had it owned its school site, but had taken no proceedings under section 5 to obtain a popular vote on the question of issuing bonds. In both cases after the law had been complied with, the power would be derived from the statute. After a district had obtained title to its school site, no new enactment would be necessary to vest it with power to issue bonds. The act confers the power on the performance of several conditions precedent. Among these conditions is the one requiring the district to own its school site. But it is no more a condition precedent to the exercise of power than a popular vote on the question of issuing bonds. It applies to all districts within the statute, just as the requirements of section 5 do. In all districts there must be a compliance with section 5, and also with the amendment as to title to the school site, to confer power upon the district to issue bonds. The issue of bonds without complying with section 5 would be just as illegal as the issue thereof without complying with the condition as to title to the school site. The language of the amendment is that the indebtedness shall not be bonded "until" the district has acquired title to its school site. The issue of bonds without a popular vote could be restrained, the same as an issue thereof without obtaining title to the school site. In either case the bonds would be illegal, would be issued without authority, and would be void in the hands of those who were not in position to rely upon recitals in or on the bonds. If it was competent for

the legislature to authorize the county clerk to estop the district by recitals in one case, it was also competent for them to vest the same power in him in the other case. We are therefore brought back, directly and inevitably, to the inquiry whether such power was intended to be vested in the county clerk as to the fact of ownership of the school site. Nor would we reach any different conclusion, could we see see any distinction between a condition precedent in the nature of a popular vote and a condition precedent of a different character.

There are many cases to be found where the municipality has been held to be estopped by recitals, although the bonds were in fact issued in the very face of statutory prohibition, or where there has been a positive restriction on the power to issue them in excess of a certain percentage of the assessed valuation of the property of the municipality, or to issue them for so large an amount that the levy of a tax of a certain per cent. would not suffice to pay the annual interest thereon. *Chaffee Co.* v. *Potter*, 142 U. S. 363, 12 Sup. Ct. 216; *Marcy* v. *Oswego Tp.*, 92 U. S. 637; *Humboldt Tp.* v. *Long*, Id. 642. These cases hold that, although the bonds are issued in excess of the power of the municipality (issued for an amount forbidden by statute,) the municipality will be estopped, by recitals made by a person or body having power to determine the question, from setting up such want of power,—from showing that the prohibitions of the law have been violated. These cases go far beyond the necessities of the case, for they were cases where there was such an utter want of power that a new act of the legislature would have been necessary to confer it, whereas in this case the power had been conferred subject to the performance of a condition precedent,—*i. e.* the acquiring of title to the school site,—and no new act was needed to make perfect the power after this condition had been complied with. On principle, these cases are sound. To the extent that the legislature can dispense with certain conditions,—can give unrestricted power,—it may authorize some one to decide finally whether the restrictions it imposes have been observed, so that

innocent holders of the bonds may be protected. If the legislature has the power in this particular case to delegate to a person, officer, or board the authority to decide whether the facts exist which warrant the issue of valid bonds, and does in fact delegate such power, the certificate of such person, officer, or board estops the municipality from asserting the invalidity of such bonds, or all such matters of fact which the legislature could and did intrust to such person, officer, or board for decision. The certificate does not, in terms, state that the facts as to title to the school site are such as to warrant the issuing of bonds; but the form of certificate used is the precise form designated by the statute, and it is that certificate which the statute, in effect, declares shall preclude inquiry into the question of title, as well as other matters. But, independent of this consideration, there would be much force in the contention that the language would be broad enough to embrace all facts submitted to the officer for decision. He certifies, not only as to the fact that a majority of the legal voters voted for the issue of bonds, but also that the bond "is issued in accordance with law." Without discussing or attempting to settle this point, we refer to some authorities bearing upon it. *Lewis* v. *Commissioners*, 105 U. S. 739; *Comanche Co.* v. *Lewis*, 133 U. S. 198, 10 Sup. Ct. 286; *Bernards Tp.* v. *Morrison*, 133 U. S. 523, 527, 10 Sup. Ct. 333; *Montclair* v. *Ramsdell*, 107 U. S. 147, 2 Sup. Ct. 391; *Dixon Co.* v. *Field*, 111 U. S. 83, 4 Sup. Ct. 315; *Moultrie Co.* v. *Bank*, 92 U. S. 631; *Marcy* v. *Oswego Tp.*, Id. 637; *Knox Co.* v. *Aspinwall*, 21 How. 539; *Coler* v. *School Tp.*, (N. D.) 55 N. W. 587, 591, 3 N. D. 249.

Some cases appear to hold that a mere recital that the bond was issued in pursuance of a particular statute is a sufficient recital of performance of all the conditions preceding prescribed by the statute. See *Bernards Tp.* v. *Morrison*, 133 U. S. 523, 10 Sup. Ct. 333; *Montclair* v. *Ramsdell*, 107 U. S. 147, 2 Sup. Ct. 391; *Knox Co.* v. *Aspinwall*, 21 How. 539. We used language in *Coler* v. *School Tp.*, 3 N. D. 249, indicating that such a recital would be sufficient to estop the municipality. What was said there was not

necessary to the decision of the case, and the writer of this opinion in fact intended to say that a recital that the bond was issued in conformity with a particular statute would be a sufficient recital that all the terms of the statute had been complied with, so far as the officer making the statement had power to pass upon such questions. It might with much force be urged that a bare recital that the bond was issued in pursuance of a particular act would constitute no more than a mere reference to the law under which the bond was issued, and not a declaration that the terms of that law had been complied with. If such construction were to be placed upon these words, there would be nothing to estop the municipality, except the mere fact of issuing the bonds. This is not sufficient to render the municipality liable, against proof that the conditions of the statute have not been complied with. *Lake Co.* v. *Graham*, 130 U. S. 674, 9 Sup. Ct. 654; *Buchanan* v. *Litchfield*, 102 U. S. 278; *Carroll Co.* v. *Smith*, 111 U. S. 556, 4 Sup. Ct. 539; *Marsh* v. *Fulton Co.*, 10 Wall. 676. In order that no one may be misled by our inadvertent language in that case, we have decided it best to make this explanation. We leave this question open to discussion whenever it arises, expressing no opinion upon it.

It is not necessary, to estop the defendant, that the certificate should be that of an officer of the municipality issuing the bonds. This power may be vested in any officer or body. Burroughs, Pub. Secur. p. 321; 1 Dill. Mun. Corp. (3d Ed.) § 523. But it seemed to be intimated on the argument that, the negotiability of such bonds being destroyed by the provision for exchange, they did not come within the rule of estoppel by recitals. If this view is sound, then the defendant would not be estopped by the certificate of the county clerk, as a majority of the cases have concluded that the bonds are not negotiable. But we are clear that there is no connection between the two doctrines. The municipality is estopped by recitals on the ground that, for the convenience of the business world, the legislature has designated some one who shall settle the question whether the law has been complied with in certain particulars. Persons who pay value, who

act in good faith, and have no notice that there was any failure to comply with the statute, have the right to rely upon the decision of the person to whom the legislature has for that purpose intrusted the decision of such matters. The estoppel depends, not upon the form of the security, but upon the facts that the person was authorized to decide such matters, and that the holder of the bonds, or some one under whom he ciaims, has paid value for the bonds, in good faith, without notice of any irregularity or illegality in the proceedings. The fact of the negotiability of the security has never entered into the consideration of the question of estoppel, and has never been regarded as forming an element in building up the doctrine of estoppel by recitals, although, in most of the cases, it is true that it appears that the bonds were in fact negotiable. Mr. Burroughs, in his work on Public Securities, says on this subject: "The doctrine, however, is one that is entirely independent of the question of negotiability. If it is correct, it applies equally to non-negotiable paper." Page 322. He reiterates this statement at pages 327 and 354. What we have said with reference to the defendant being estopped by the certificate of the county clerk from showing that the title to the school site had not been vested in the school board applies with equal force to several defenses which the defendant sought to prove on the trial. Defendant offered to prove that the question of issuing the bonds was never submitted to a vote of the resident electors of the district at any school meeting called for that purpose; that no notice, as required by section 5 of the act, was ever given, by posting in three conspicuous places in the district stating the time, place, and object of the meeting, and that it was for the purpose of auditing and settling the school indebtedness of the district, and issuing bonds to provide for payment thereof; that the school board of the defendant was never petitioned in writing by at least one-third of the resident electors of said district to call a meeting to audit and settle the indebtedness of the district; that a committee was never appointed to audit and settle the indebtedness of the district; that the same was never

audited and settled by a committee from the district, or the school board; that the claims for the bonds in suit were never given up to the defendant, or canceled; that the resident electors of the defendant never authorized or sanctioned, or in any manner ratified, the issuing of the bonds. All of these matters were settled against the defendant by the certificate of the county clerk that the bonds were issued in accordance with law. They were matters which the statute made it his duty to decide before he appended his certificate to the bonds, as will be seen by reference to sections 5 and 6 of the statute, and upon his decision the plaintiff could confidently rely; he being a purchaser in good faith, for value, and without notice of any irregularities in the proceedings. There was therefore no error in excluding proof of these defenses. Defendant also offered to prove that the persons who signed the bonds as director and as clerk were not the qualified director and clerk of the defendant. If the offer had been to prove that they were not director and clerk, either *de jure* or *de facto*, the court would have been obliged to receive the evidence. Even a bona fide purchaser of a negotiable municipal bond must take the risk of the signatures being forged, or that the persons signing are not in fact officers of the municipalities issuing the bonds. *Coler* v. *Cleburne*, 131 U. S. 162, 9 Sup. Ct. 720; *Anthony* v. *County of Jasper*, 101 U. S. 693; 15 Am. & Eng. Enc. Law, p 1292. But the offer was not to prove that the persons who signed these bonds were not actually exercising the functions of these offices, respectively, even as *de facto* officers. Defendant merely proposed to prove that they were not qualified officers of the district. There was no error in rejecting this proof. A *de facto* director and a *de facto* clerk could bind the district the same as *de jure* officers could.

The defendant also offered to prove that the assessed valuation of all of the property in the defendant district in the year 1883 was only $4,000, and that the legal voters of the district never designated a site for the school district house at any meeting; that they never authorized the school board to build a school

house, or to issue any warrants for which the bonds in suit were given; and that they never ratified or sanctioned the matter in any manner. These offers, by themselves, would not have constituted a defense to this action. Perhaps the purpose of the defendant was to show that the debts which were funded by the issue of those bonds were void, under the decision of the Territorial Supreme Court and of this court in the cases of *Farmers' & Merchants' Bank* v. *School Dist. No. 53*, 6 Dak. 265, 42 N. W. 767, and *Capital Bank of St. Paul* v. *School Dist. No. 53*, 1 N. D. 479, 48 N. W. 363. But it would not follow from the fact that the warrants were void that the bonds themselves would also be void, in the hands of an innocent purchaser. This would not necessarily establish a want of consideration. The bonds might have been sold originally for cash, as the statute authorizes, and the subsequent application of the proceeds to pay void claims would not operate to the prejudice of the one who had paid value for them. Indeed, a majority of the court are of opinion that defendant cannot establish a want of consideration for the bonds by showing that they were issued in exchange for void warrants, provided the warrants had in fact been audited, surrendered, and canceled. This ruling will control the trial court on the new trial of this case. From this view, however, I am compelled to dissent. The statute in express terms, declares that the auditing of the claims against the district shall not render valid such of them as may be invalid. They remain as void in the hands of the holder of them after they are audited as they were before. The holder of them cannot enforce them against the district; and, when he surrenders them in exchange for bonds, it is clear that he has parted with nothing of value, and therefore has paid nothing for the bonds. It is the same as though he had paid counterfeit money for them. The bonds in his hands are not the bonds of the district, not because there was not power to issue them, but because the district has received no consideration for them. Not being negotiable, the plaintiff would take them subject to this defense of want of consideration, unless the district should be

held to be estopped from insisting that warrants, after they have been audited and canceled, are void, as against a purchaser who pays value for the bonds. In other words, the district must be held to be estopped, not only as to the existence of power to issue the bonds, but also as to the fact whether they were sold for a valuable consideration. To so hold is to go beyond all authority, and to extend the doctrine of estoppel by recitals to matters which have been governed by other rules.

At this point it becomes necessary to make an important distinction. It is necessary to correct solution of this problem to keep constantly in mind the distinction between the defense of want of power and the defense of want of consideration. The bonds not being negotiable, the defendant will be successful if either defense is established. But it cannot prove the invalidity of the indebtedness audited to establish want of power, because the certificate of the county clerk is a final decision by an authorized officer that a sufficient amount of district indebtedness has been audited and canceled to warrant the issue of the bonds so certified. It was for this purpose that this certificate was required to be made. Power to bond to fund indebtedness would depend upon the existence of debts to be funded, and would be only commensurate with such indebtedness. Such bonds could not be negotiated if this question as to the existence of sufficient indebtedness to warrant the issue of the bonds actually issued were left open to future investigation and decision. To preclude all inquiry into it, as against innocent holders of the bonds, the legislature provided for the indorsement upon such bonds of the certificate of the county clerk, who is charged with the duty of ascertaining such fact, and this was done that the question of power should not thereafter be open to investigation. But the utmost scope of the legislative intent was by the certificate to settle the question of power, and no other question. This is always the object of recitals in such bonds. The sole purpose is to foreclose inquiry into the question of power, by estopping the municipality from showing that certain conditions precedent to

the issue of bonds have not been complied with, or do not exist, and no case can be found where they have been held operative to estop the municipality from showing want of consideration. The certificate of the county clerk is not an assurance to the public that the bonds have been in fact sold for value. The sale does not take place until after the certificate is indorsed thereon. No one would buy them before. No one ever. does purchase such securities in advance of their being put in such shape that he can buy them with safety, so far as the question of power is concerned.

The statute in express terms, provides that before the bonds are sold, they shall be so certified. This certificate, from the very nature of the case, cannot embrace a fact which must occur after the certificate is made, which is not intrusted to the county clerk for decision, and of which he cannot be expected to have any personal knowledge; the bonds being subsequently sold by other officers, *i. e.* the proper officers of the school district. It is not a certificate that the bonds were sold for cash, or for audited warrants, or that they were sold at all. It is a statement to the public that, if the bonds are sold, the one who buys them may confidently rely upon their being power to issue them. If this certificate creates an estoppel, not only as to power, but also as to consideration, then it follows that it cannot be shown, as against one who has bought them as non-negotiable paper, and therefore subject to the defense of want of consideration, that they were sold for void warrants, which had never been audited. Indeed, upon this theory, it cannot be shown that, as a matter of fact, they were given away. But it is said that while the purchaser must take the risk of their being given away, or issued in exchange for void warrants, which had not been audited, yet, if they were in fact issued for warrants which have been audited, the validity of such warrants cannot be inquired into. Right here is the pivotal point of this case, so far as this question is concerned. What is there in the statute to warrant a purchaser of such bonds in assuming that any warrant which has been audited is a valid warrant? There is nothing. On the contrary, the

statute explicitly declares to the world that a void warrant is still void, although it may have been audited; that the holder of it cannot enforce it; and that, if he surrenders it in exchange for bonds issued by the district, he has paid nothing of value for the bonds so issued. The law merchant declares to the one who subsequently buys such bonds that the fact that the bonds were void in the hands of the first holder, for want of consideration, can always be shown as against him (the subsequent purchaser.) Whence comes this guaranty to the public that the audited warrants are valid? It does not come from the certificate of the county clerk, for that merely asserts that the auditing committee have adjudged enough warrants to be valid to authorize the issuing of the bonds in question. What particular warrants have been decided to be valid is not stated. What effect this decision of the auditing committee is to have upon the warrants themselves, we must look into the statute to determine. The statute, in express terms, declares that it shall not have the effect to validate such warrants as were before void. So far, however, as the question of power is concerned, the decision of the auditing committee is final, because the statute expressly authorizes the issue of bonds, to the extent that such claims are adjudged to be legal by such committee. The language of the statute is that the "school board shall forthwith proceed to issue bonds to the amount of the indebtedness as audited and settled." There is power to issue bonds to that extent, whether such claims are valid or not; and the certificate of the county clerk is final, that claims enough have been so audited to authorize the issue of the bonds on which the certificate is indorsed. But right here the statute draws the line, and declares that, while the question of power cannot be assailed by showing that not enough valid warrants were audited to justify the issue of bonds issued, yet, nevertheless, such warrants as were void before they were audited are still void for all other purposes; and, if they are declared to be void for all other purposes, how can a purchaser of bonds, who takes subject to the defense of want of consideration, insist

that the district is estopped from showing that they were void, for the purpose of proving that nothing was paid for the bonds which were issued in exchange for them? The estoppel cannot rest upon the certificate, because it may be shown despite the certificate that the bonds were given away, or issued in exchange for void warrants, which had not been audited. The estoppel must rest upon the circumstance that the warrants in exchange for which the bonds have been issued had in fact been audited. As to such warrants, what representation does the statute make to the public? It declares to the purchaser that these warrants, although audited, may in fact be void, and that auditing them does not make them valid; that, if void, he who surrenders them for bonds gives nothing for value for such bonds, and therefore cannot enforce them. The law merchant here steps in, and informs the purchaser of such bonds, when they are not negotiable, that, if they were issued in exchange for such void warrants, he takes them subject to the same defense as was effectual against them in the hands of the first holder.

I fully agree with the majority of the court in the view that, if the bonds were originally sold for cash, they cannot be invalidated by showing that the audited claims are illegal. The certificate of the county clerk settles the question of the necessity of issuing the bonds on which such certificate is indorsed. Section 5 of the act, in terms submits to the committee therein referred to the decision of the question of the fact of indebtedness for the purpose of funding, and the amount thereof. It is true that this decision is not to be binding upon the district as an admission of the legality of any claim. But the obvious purpose of this provision is to save the district from being bound by their decision, as against the holders of such claims. So far as the public were concerned, they had a right to rely on the decision of this board as to the amount of bonds necessary to fund the indebtedness of the district, and to purchase the bonds relying upon the correctness of such decision. The authorities amply sustain this proposition. *Sherman Co.* v. *Simonds,* 109 U. S. 735,

3 Sup. Ct. 502; *National Bank of Commerce* v. *Town of Grenada,* 41 Fed. 87, 92, 93. See, also, *Hackett* v. *Ottawa,* 99 U. S. 86; *Ottawa* v. *Bank,* 105 U. S. 343. But, speaking for myself, I do not think that they have any right to rely upon the auditing of such warrants as establishing their validity, so that the surrender of them constitutes a sufficient consideration for a bond issued in exchange for such warrants. But, on the question of power, we are all agreed that the recitals in the bonds estop the district. The bond, upon its face, recites that it was issued "for the purpose of liquidating indebtedness incurred for building school house." Section 6 requires the county clerk, before registering the bond and making his certificate, to ascertain whether the provisions of section 5 have been complied with, and whether the bonds are authorized to be issued as provided for in the act. The county clerk has decided this question in the affirmative by registering the bonds, and by making the certificate to which we have already referred. He has thus certified that the committee have decided that the bonds are necessary to fund the indebtedness of the district, and that such indebtedness has been surrendered up and canceled. We all hold that one who paid cash for these bonds at the time they were originally issued would be protected, as against the defense that there were in fact no outstanding debts of the district to fund. So would a purchaser from him. There was no attempt to prove that the record in the district or in the county clerk's office failed to show a compliance with the law. Whether a bona fide purchaser is bound to take notice of such records, or either of them, or the absence of any such records, it is not necessary for us to decide. While the statute requires these records to be kept, there is authority for the doctrine that such a purchaser can rely on the recitals in the bond, or on the certificate indorsed upon it. *Lewis* v. *Comanche Co.,* 35 Fed. 343; *Rock Creek Tp.* v. *Strong,* 96 U. S. 271; *Gibbs* v. *School Dist.,* 88 Mich. 334, 50 N. W. 294.

We hold that the district is estopped by the certificate of the county clerk from proving as a defense that it had no title to its

school site at the time the bonds were issued. A majority of the court (the Chief Justice and the writer of this opinion) hold that the bonds are not negotiable, and are therefore open to the defense of want of consideration in the hands of the plaintiff. But a majority of the court (the Chief Justice and Judge Wallin) hold that want of consideration cannot be shown by proving that the bonds were paid for by void warrants, if such warrants were in fact audited and canceled under the provisions of the statute. And all the members of the court are agreed that all the other defenses referred to in the opinion are foreclosed by the certificate of the county clerk. Because the court below refused to allow defendant to prove want of consideration for the bonds, the judgment is reversed, and a new trial ordered.

BARTHOLOMEW, C. J. A proper disposition is made of this case in the opinion prepared by Judge Corliss. But, to avoid any possible misconception, I desire to state my individual views more fully upon one point than they are stated in the opinion of the court. It will be noticed that Judge Corliss and myself hold that the bonds in suit are not negotiable by reason of the additional contract to pay exchange on New York. This holding, of course, in the absence of any other controlling circumstances, opens the bonds to the defense of want of consideration, even in the hands of a bona fide purchaser before maturity, as plaintiff is shown to be. Judge Wallin, on the contrary, holds that the bonds are negotiable; hence, in his view, all inquiry into the consideration is barred. But, while I believe the bonds to be non-negotiable, yet I believe the inquiry into the consideration is, to a large extent, limited by the terms of the statute under which the bonds were issued, and the recitals in the certificate of the clerk. Judge Corliss finds nothing in the statutes and recitals which should, in his judgment, restrict the inquiry into the consideration; hence, he holds that no restriction exists. The judgment below is reversed solely because the learned trial court refused to permit any inquiry whatever into the question of consideration. The error in that ruling goes only to the extent to which a majority of

this court can unite in saying that the question of consideration was open. For the guidance of the trial court on the new trial, it is necessary that the line be clearly defined, and the holding of this court understood.

These bonds were issued under unusal conditions. The statute which authorized their issue proceeded upon the theory that the school districts of Barnes county had a large amount of outstanding indebtedness, and that the validity of a portion or all of this outstanding indebtedness was questioned, and the power to fix the amount of indebtedness for the payment of which bonds should be issued was left entirely with the district itself. The first step required by the statute was the calling of a meeting of the voters of the district, at which meeting the voters selected three of their own number to act as a committee to audit and settle the indebtedness of the district. This committee was required to give public notice of the time and place where it would meet to audit and settle such indebtedness, and also of the time and place where it would make a full report to the district, at which time and place the voters were required to meet to receive such report, and vote upon the question of issuing bonds for the payment of the indebtedness, as audited and settled. If their was an affirmative vote, under the terms and provisions of the statute, then the school board was required forthwith to issue bonds to the amount of the indebtedness, as audited and settled; but, before the bonds could be disposed of, they must be presented to the clerk for the certificate, as set out in the foregoing opinion. A provision to in the statutes declared that the auditing and settling by the committee should not be construed to be binding on the district, or as an admission of the legality of any claim or alleged claim. Upon this provision my Brother Corliss builds an able argument to show that, where bonds were issued and delivered in exchange for such claims, a recovery on the bonds may be defeated by showing that such claims were in fact invalid, and hence no consideration was given for the bonds. I fully agree with him that the action of the committee, alone, could not bind the district, or

estop it from disputing the validity of the claim; but I entirely disagree with him as to the result that follows from that circumstance, when bonds have in fact been voted and issued, and exchanged for such claims. In my judgment, that provision in the statute was intended to meet a case where, after the committee had .audited and settled certain claims, the district, by vote, refused to issue bonds for the payment of such claims. If then suit should be brought against the district on the original claims, the action of the committee could not be shown to establish the legality of the claims, or to estop the district. But if we are to go further, and after the tribunal authorized by law and appointed by the district has declared certain claims valid, and after the district, with full knowledge of all the facts, has ratified the action of that tribunal by voting to issue bonds for the payment of the claims thus allowed, and after the bonds have been in fact issued and exchanged for the allowed claims, if then we permit the district, when sued on the bonds, to declare them worthless because the claim for which they were exchanged was invalid, then we may well ask why was the act ever passed? Why this expensive and protracted preparation for the enactment of so light a farce? An examiniation of the statute will show that it expressly authorizes and contemplates a direct exchange of the bonds for the allowed claims. True, the district is not limited to that. It may sell for cash. But the exchange is expressly authorized. Does it not involve a contradiction to say that when the amount of bonds, and the purpose of their issue, have been fixed as the law directs, and when the bonds have been voted and issued as the law directs, and when they have been exchanged for the exact consideration that the law directs, nevertheless the bonds are without consideration, and worthless? Did the law intend to direct the issuance of worthless bonds? The certificate does not foreclose the question of consideration in this case, more than in any other. But it establishes certain facts, to-wit, that the committee had audited and settled certain claims; that the district had, by vote, ratified that settlement, by directing the

issuance of bonds to pay such claims, as audited and settled; that the bonds had issued; and that the original claims (presumably resting in warrants) had been delivered up and canceled. Under these circumstances, when the claim owner receives the promised bonds in exchange for his surrendered and canceled claim, I contend that the district is estopped, by every principle of the law of estoppel, from saying that such bonds are without consideration. But whether or not the claim owner ever received the bonds in exchange is not fixed by the certificate. When the certificate was made the bonds were in the hands of the school board. They were yet to be disposed of by them. If they sold them for cash, as the law directs, or if they exchanged them for surrendered claims, as the law directs, the question of want of consideration cannot be successfully raised. But if the bonds were given away, or if, through fraud or favoritism, they were sold for less than their value, or less that the statute directs, such facts might be shown, to establish want of consideration. The offer of defendant was broad enough to cover any wrongful or fraudulent disposition of the bonds by the school board, and for that reason, and that alone, I consent to a reversal in this case.

WALLIN, J. I concur in what is said by the Chief Justice upon the question of consideration.