## THE COUNCIL BLUFFS IRON WORKS v. CUPPEY.

1. **Evidence:** MATERIALITY. Testimony properly introductory to evidence supporting the principal issue should not be rejected for immateriality.

2. **Contract:** CONDITION PRECEDENT. Where a contract stipulated that C. should deliver a certain number of railroad ties at A. on board cars to be furnished by S. and M., it was *held* that the duty to perform the conditions of the agreement was mutual, and that the failure of one party to fulfill its requirements would not discharge the other from the performance of his obligation.

3. **Promissory Notes:** WITHOUT DEFALCATION: NEGOTIABILITY. An instrument wherein one promises to pay a certain sum or deliver certain property, without defalcation, is negotiable; and, when transferred by indorsement before maturity, is not subject to set off or defense for want of consideration in the hands of the transferee. BECK, J., *dissenting*.

*Appeal from Pottawattamie Circuit Court.*

MONDAY, JUNE 21.

THE plaintiff claims the amount of two promissory notes, each for the sum of $773.50, executed by defendant to H. B. Smithers and Jno. Morris, on the 6th of December, 1869, and by them assigned to plaintiff on the 7th day of December, 1869.

One of these notes is due the 28th day of December, 1869, and the other the 12th day of January, 1870. Both are payable to the order of H. B. Smithers and John Morris, without defalcation, in railroad ties, as specified in a chattel mortgage, executed to secure the same.

The petition prays judgment for the amount of the notes, and a foreclosure.

The answer alleges:

1. That plaintiff is not the owner of the instruments sued on.

2. That they were given in part to secure the purchase money of the saw mill and fixtures mentioned in the mortgage, and that Smithers and Morris did not own a certain

circular saw attached to the mill, worth $200.00, and which formed a part of the consideration of the purchase.

3. That at the time of the execution of the notes and mortgage, and as part consideration therefor, Smithers and Morris agreed to deliver to defendant certain hardware of various kinds to the value of $97.00, which they have failed to deliver.

4. That at the time of the execution of the instruments sued on, Smithers and Morris agreed to pay defendant $125.00, which they have failed to do, and that, to the extent of these three sums, the consideration of the notes has failed.

5. That, by the terms of the mortgage, Smithers and Morris, and their assignees, were to furnish on the track of the Chicago, Rock Island & Pacific Railroad, at Avoca, cars on which defendant was to deliver the ties; that no cars were furnished, and that defendant was ready to deliver the ties, but could not because of the failure to furnish cars as agreed.

The cause was tried by the court, and judgment was rendered for plaintiff for $1,206.08, and for a foreclosure of the mortgage.    Both parties appeal.

*Clinton, Hart & Brewer,* for plaintiff.

*Montgomery & Scott* and *Baldwin & Wright,* for defendant.

DAY, J.—I.  As the defendant's appeal involves the right of plaintiff to recover anything upon the instruments in suit, 1. EVIDENCE: we consider it first.  The evidence shows that C. materiality.  F. Hendrie was at the time of the transactions involved, and now is, president of the Council Bluffs Iron Works.   The plaintiff introduced as a witness one Overton, who testified as follows:

" In 1869 I was dealing in ties, and Mr. Hendrie asked me if I could sell some ties for him,   I told him I had a contract for getting out ties for the O. & S. W. R. R., and that I could put in his ties on my contract.  He told me they were at Avoca, and were in two lots.   I made sale of them to the O.

& S. W. R. R., and sent the inspector of the company, Mr. W. W. Taylor, over to inspect the ties."

This evidence was objected to as incompetent, irrelevant and immaterial.

The witness also further testified: "I don't remember whether I went out myself before the 4th of January, or not. On the 4th of January, I see from my memorandum, I was there. I was there again on the 11th of January, and staid all night with Mr. Cuppy, and he came in here with me next day. When I was there on the 4th of January, I asked him why he would not give the ties up, and he said his lawyer told him not to. That was the way the conversation came up. On the 11th I told him I must have ties to put in on my contract with the O. & S. W. R. R., and asked him where I could buy ties. He told me I could buy ties of other parties cheaper than I could of him. The 4th of January is the first I have any account in my memorandum of being there. I think I was there before that, but I don't know when it was. I sent Mr. Taylor, the O. & S. W. inspector, to see him before I went at all. He went there for the purpose of inspecting and receiving the ties for the O. & S. W. R. R., which I bought of Hendrie, but he did not get them."

This testimony was objected to as incompetent. The defendant claims that all this testimony is hearsay. We think it was properly admitted. The first part of it is merely historical or introductory, showing the circumstances under which the witness had an interview with defendant. The latter part tends to show, from defendant's admissions, that he was not willing to deliver the ties, and thus to contradict his testimony and rebut the defense upon which he relies.

II. The mortgage stipulates that it shall be void upon condition that the defendant deliver to Smithers and Morris, on 2. CONTRACT: condition precedent. board the cars of the Chicago, Rock Island & Pacific Railway, to be furnished by Smithers and Morris, at Avoca, 1105 railroad ties in the month of December, as per the terms of the note sued on, and 1105 ties on or before the 12th day of January, 1870. Defendant claims that the having of the cars at Avoca, to receive the ties, is a con-

dition precedent to the delivery, and that, as there is no proof that these cars were furnished, defendant is discharged from his liability upon the notes, or, at most, can only be required to furnish the ties. Upon the trial the defendant testified as follows:

"My mill is located near the railroad, only a few rods from it, and about a mile and a-half east of the depot,at Avoca. I piled a lot of the ties up there. Some I piled at my house and some of them I hauled to Avoca. That is what I did on my part toward filling the contract. I sawed out the ties and placed them near the road, ready for delivery. I got ties ready for delivery sufficient to fill my contract. I have still a sufficient number on hand to fill my contract. I could have begun the delivery of them on the first day, if cars had been furnished me. There were ties enough yesterday to fill the contract, and I guess they are there yet."

Defendant does not attempt to state the number of ties delivered at Avoca, and as to the balance there is no pretext that anything was done as to the delivery, except that they were sawed and could have been delivered. The defendant has not shown such performance on his part as will exonerate him from a payment of the notes in money.

The instruments sued on fix both the time and place of their discharge in property. That the plaintiff should have had cars at the time and place of delivery to receive the ties is no more a condition precedent, than that the payee of an instrument to be discharged in property should be at the time and place of delivery ready to receive the property tendered. In neither case can a full and complete delivery be made without the concurrence of the payees. In neither case does the failure of the payee discharge the maker from doing all that he can do, without the concurrence of the other party. The defendant might have hauled the ties to Avoca, and, if no cars had been there to receive them, he might have piled them near the railroad track, at the usual place of receiving such property, and set them apart for the plaintiff. If he had done this, the property in the ties would have passed to plaintiff, and the note would have been discharged. *Games v. Man-*

*ning*, 2 G. Greene, 251; *Hambel v. Tower*, 14 Iowa, 530; *Barnes v. Graham*, 4 Cowen, 452; *Lamb v. Lathrop & Collins*, 13 Wend., 95. But defendant has shown no effort at delivery, no offer to deliver; not even a notice to plaintiff that he was ready to deliver.

The only one of the numerous cases cited by defendant which seems to sustain his opinion, is that of *Goodwin v. Holbrook*, 4 Wendell, 377. In that case a sum of money was to be paid in salt, the party contracting to make payment, agreeing to pack the salt in barrels in the usual way of packing salt, the contract specifying that the barrels were to be furnished and delivered at the place of manufacture by the party to whom the payment was to be made. It was held that in an action for the non-delivery of the salt it was necessary for plaintiff to aver that he had furnished the barrels. That case falls under a principle different from the one at bar. In that case the first step toward the delivery was the packing of the salt in barrels at the place of manufacture. Until the barrels were furnished, that step could not be taken. In this case the ties could have been hauled to Avoca without the furnishing of cars to receive them, and that should have been done.

III. Plaintiff claims that the court erred in admitting evidence of the failure of consideration in part of these instruments, and in reducing the amount of recovery because of such failure. The instruments in question were transferred before maturity, by written assignment. Section 2084 of Code of 1873, 1795 of Revision of 1860, provides that all instruments in writing, by which the maker promises to pay to another a sum of money in property or labor, are assignable by indorsement thereon or by other writing and the assignee shall have a right of action in his own name, subject to any defense or counter claim which the maker or debtor had against any assignor thereof, before notice of his assignment.

*3. PROMISSORY notes: without defalcation: negotiability.*

Section 2085 of the Code of 1873, 1797 Revision of 1860, is as follows: "Instruments by which the maker promises to pay a sum of money in property or labor, or to pay or deliver property or labor, or acknowledges property or labor, or money to

be due to another, are negotiable instruments with all the incidents of negotiability, whenever it is manifest from their terms that such was the intent of the maker; but the use of the technical words 'order' or 'bearer' alone will not manifest such intent." Plaintiff insists that the use of the words "without defalcation," in connection with the promise to pay to the order of Smithers and Morris, gives to the instruments in question all the incidents of negotiability. Defalcation is thus described by Bouvier: "The reduction of the claim of one of the contracting parties against the other, by deducting from it a smaller claim due from the former to the latter." Webster defines defalcation thus: "A cutting off; a diminution, deficit or withdrawment. That which is cut off, diminished or abated." Under our law the distinguishing feature of instruments payable to order or bearer in money is that they are not subject to such reduction or defalcation. This is the principal quality which is implied in the term negotiable paper.

That it is competent for contracting parties to attach this quality to instruments payable in property is apparent from the provisions of section 2085 of the Code, above quoted. How then could this intention be more aptly expressed than by the use of a word which implies that the instrument shall not be subject to diminution, on account of any claim that the maker may have against the payee. In the case of *McCullough v. Houston*, decided in the Supreme Court in Pennsylvania, in 1789, 1 Dallas, 441, it was held that the indorsee of a note took it subject to all equitable considerations existing between the maker and the payee.

This construction was followed in several subsequent decisions, and in 1797, in order to remedy the inconveniences which were found to flow therefrom, a statute of the State of Pennsylvania was passed, enacting that instruments executed in the city or county of Philadelphia, promising to pay to another or his order a sum of money "without defalcation" or "without set-off," should be held by the indorsee discharged from any claim of defalcation or set-off. *Lewis v. Reeder*, 9 Sergeant & Rawle, 193, was an action upon a note payable with-

out defalcation, but not executed in the city or county of Philadelphia, and hence not governed by the provisions of the statute. It was held that the promise to pay without defalcation was an engagement upon the part of the maker that he would make no objection to payment, placing him in the same position of the obligor of a bond, who is inquired of by the assignee, before assignment, whether he has anything to say against payment, and who answers that the bond is good, and that the maker could not set up a failure of consideration against the indorsee. See, also, *Cromwell and Winchester v. Arrott*, 1 Sergeant & Rawle, 180; *Lighty v. Bunner*, 14 Sergeant & Rawle, 127.

Unless this effect is to be given to these words in the instruments sued on, they can have no meaning, and must be utterly ignored in the construction.

The decision in *Lewis v. Reeder*, *supra*, is maintainable upon no other ground than that, aside from statutory provision, the addition of the words "without defalcation," to a promise to pay to the order of another in money, gives a negotiable character to an instrument which, without such words, would lack that character. And we know of no reason why these words may not in the same manner affect a promise to pay in property or labor, under a statute which provides that such instruments are negotiable, when the intention to make them so is manifest. We are of opinion that the introduction of these words imports an agreement not to insist upon any reduction on account of failure of consideration or set-off, and that the assignee before maturity, without notice of existing equities, takes it as any other negotiable paper, indorsed under like circumstances.

It follows that the court erred in admitting evidence of a failure of consideration, and in reducing plaintiff's claim.

On defendant's appeal the cause is affirmed, and on plaintiff's appeal it is ⸜

                                             REVERSED.

BECK, J., *dissenting*.—Under our statute a promissory note for property, in order to be negotiable, must be made so by words or terms expressing such intention of the parties; the

words "bearer" or "order," in the body of the note are not sufficient for that purpose. In my judgment, the words "without defalcation," do not express the thought that the note is intended to be negotiable. Admit that the word *defalcation* possesses the meaning given it by Bouvier, yet it does not make the note negotiable. A party to a contract may bind himself that the obligation created thereby shall not be subject to abatement or set-off, on account of any claims he holds against the other party, and the contract may be subject to assignment carrying all the rights of the original obligee to enforce it. But this alone would not make the instrument negotiable. The law as to the obligation and rights of indorsers and holders and the rules relating to presentment, demand, etc., as well as the rules forbidding inquiry into the consideration when the instrument is in the hands of an indorsee, would not apply to the instrument. In this view the conclusions of the opinion, in my judgment, are not sound, and its language and the inferences to be drawn therefrom are not correct.

But I am of the opinion that the expression, "without defalcation," cannot be construed into a contract to the effect that no abatement or set-off can be made to the note. Certain I am that neither lawyers nor business men so understand the language. The interpretation put upon it, to make it so mean, is purely artificial and entirely arbitrary. It was introduced in that character in the Pennsylvania statute, and was evidently adopted by the courts of that State because of statutory recognition of the words and their meaning. It is evidently a strained construction of the language for a supposed good purpose; a thing sometimes done by courts but never to be justified. The Pennsylvania cases are briefly stated in the opinion of the majority, but attention on the part of the reader will enable him to ascertain their drift and purpose. By force of statutes of New Jersey and Missouri, the words have the meaning claimed for them by the majority opinion, when used in promissory notes made in those States.

Another consideration in support of my view ought to be stated. If the maker of a note, by the use of the words, contracts to pay (substituting the meaning of the term "without

defalcation" adopted in the foregoing opinion,) "without reduction of the claim by deducting from it a smaller claim due from the payee," how can the language be applied to the case of an utter failure of consideration, or of a partial failure. Certainly one may agree that he will not set up a claim for reduction of the amount he obligates himself to pay by a contract, on account of any existing demand he holds against the obligee, yet he ought not to be held bound by such an agreement to abandon all defense against a suit by the obligee, or his assignee, based upon his fraud, deceit, default or other matter, whereby the obligor is deprived, in whole or in part, of the benefit of the contract.

For these reasons I cannot concur in the foregoing opinion.