W. L. CULBERTSON, Appellant, v. JOHN NELSON.

**Negotiable Instruments.** A bill of exchange drawn for a stated sum "with exchange" is not a negotiable instrument by the law mer-
1  chant, for want of certainty in the sum to be paid. *Smith v. Kendall*, 9 Mich., 242, *distinguished* and *criticised*. *Flagg v. District*, 58 N. W. Rep. (N. D.) 499, and *Iron Works v. Cuppey*, 41 Iowa, 104, *affirmed* and *distinguished*. *Sperry v. Horr*, 32 Iowa, 184, and *Bank v. Railway*, 52 Iowa, 378, *explained*.

SAME.  Code, 2085, defining attributes of negotiable instruments,
3  does not dispense with certainty.

SAME.  The use of neither "order" or "for value received" prove an
4  intent to make a negotiable instrument.

SAME: CUSTOM.  It is not material that a custom to treat such instru-
2  ments as negotiable has grown up among bankers.

(187)

*Appeal from Council Bluffs Superior Court.*—HON. J.
E. F. McGEE, Judge.

TUESDAY, JANUARY 15, 1895.

Action at law upon an accepted bill of exchange.
Defense, want of consideration, fraud in the inception
of the bill, and alteration thereof after delivery. The
case was tried to the court without a jury, and judg-
ment rendered for defendant. Plaintiff appeals.—
*Affirmed.*

*Flickinger Bros.* and *McCrary & Craig* for appel-
lant.

*Wherry & Walker* and *Wright & Baldwin* for
appellee.

Deemer, J.—This is another case where the unsus-
pecting has been imposed upon by the patent-right
swindler, and, in its facts, is somewhat similar to
the case of *Bank v. Zeims,* Ante 140, 61 N. W. Rep.
483. In this case the patent was on a water
heater or feed cooker, and in the Zeims case it was on
a fence. The lower court made a finding of facts from
which he drew certain conclusions of law, which were
as follows: "(1) That the draft in controversy was
obtained of the defendant through fraud and misrep-
resentation of the payee therein, Thos. E. Hall, and is
wholly without consideration. (2) That the draft con-
tained the words 'with exchange,' and, by reason
thereof, is not a negotiable instrument. (3) That, the
draft not being negotiable, the fraud and failure of
consideration can be pleaded against it in the hands of
this plaintiff. (4) The plaintiff, holding the draft, is
subject to the same equities and defense that the orig-
inal payee would hold it. The court is not called upon

to decide whether or not plaintiff stands in a different position than the original payee in the draft, and whether or not he could recover if the draft had been a negotiable instrument. Wherefore, it is ordered, adjudged, and decreed by the court that the plaintiff's petition be dismissed, and the defendant have judgment against the plaintiff, W. L. Culbertson, for the costs in this action, taxed at $41.75, and that execution issue therefor."

The following is a copy of the draft upon which the action is predicated:

| Dec. 9, 1889.<br><br>Accepted and<br><br>p a y a b'l e    a t<br><br>Council Bluffs,<br><br>Ia.<br><br>John Nelson. | Thomas E. Hall, Business Manager.         No. 10,0o2.<br>Hall & Company.         Kansas City. Mo.<br>Willits, Ia., Dec. 9, 1889.<br>October first, after date, pay to the order of Thomas E. Hall nine hundred dollars ($900), with exchange, and eight per cent. interest from date, if not paid when due.   Value received, and charge to the account of<br>To John Nelson,         \|         Hall & Co.,<br>Willits, Iowa.         \|         By Thos. E. Hall. |
|---|---|

There was ample testimony to sustain the findings of the court below that the draft was obtained through fraud and misrepresentation, and was and is wholly without consideration.   Indeed, counsel do not challenge these findings.   The error of the court, if any, is in his conclusions of law.   The appellant contends that the draft is a negotiable instrument, and is not subject to the defenses lodged against it in the hands of a bona fide holder; while the appellee insists that it is not negotiable, and therefore subject to these defenses, because of uncertainty in the amount to be paid, for that it includes "exchange." It is to be regretted that this question, which is of so much moment to the business interests of the country, is in so unsettled a condition.   If there is any branch of the law which

should be reduced to a certainty, it is that relating to commercial paper. After long usage, the custom of traders finally ripened into the law merchant, and this law gave to notes and bills of exchange their present character, in which they, in a sense, become a part of the circulating medium of the whole country; and it is exceedingly important that state lines do not mar the symmetry of the rules governing such paper. However, we find the question presented has been variously decided by the different courts of the country; and, if there is anything at present uncertain, it is the negotiability of such an instrument. The following cases affirm the negotiability of such paper: *Smith v. Kendall,* 9 Mich. 242; *Johnson v. Frisbie,* 15 Mich. 286; *Leggett v. Jones,* 10 Wis. 35; *Morgan v. Edwards,* 53 Wis. 599, 11 N. W. Rep. 21; *Bradley v. Lill,* 4 Biss. 473, Fed. Cas. No. 1,783; *Price v. Teal,* 4 McLean, 201, Fed. Cas. No. 11,417; *Whittle v. Bank* (Tex. Civ. App.), 26 S. W. Rep. 1106; *Hastings v. Thompson* (Minn.), 55 N. W. Rep. 968; *Grutacup v. Woulluise,* 2 McLean, 581, Fed. Cas. No. 5,854. On the other side of this question are the following cases: *Lowe v. Bliss,* 24 Ill. 168; *Read v. McNulty,* 12 Rich. Law, 445; *Bank v. Strother,* 28 S. C. 504, 6 S. E. Rep. 313; *Palmer v. Fahnestock,* 9 U. C. C. P. 172; *Saxton v. Stevenson,* 23 U. C. C. P. 503; *Bank v. Newkirk,* 2 Miles, 442; *Bank v. Bynum,* 84 N. C. 24; *Russell v. Russell,* 1 MacArthur, 263; *Fitzharris v. Leggett,* 10 Mo. App. 529; *Hughitt v. Johnson,* 28 Fed. Rep. 865; *Bank v. McMahon,* 39 Fed. Rep. 283; *Flagg v. School Dist.* (N. D.), 58 N. W. Rep. 499; *Bank v. Goode,* 44 Mo. App. 129; *Caset v. Kirk,* 4 Allen (N. B.), 543; *Nash v. Gibbon,* Id. 479. Turning to the text writers, we find that Randolph, in his work on Commercial Paper, at section 200; Daniel, in his treatise on Negotiable Instruments, at section 54; and Tiedeman on Commercial Paper, at section 280,—affirm the negotiability of

such papers; while Benjamin's Chalmers on Bills and Notes, at page 18; Parsons on Notes and Bills, at page 38; and perhaps others,—deny it. Some of the cases cited relate more particularly to the question as to whether instruments in form of promissory notes, with such a stipulation, are promissory notes under the statute of Anne (1705), or not, and some of them to the negotiability of such instruments. The only English case we have been able to find, having any bearing upon the case, is *Pollard v. Herries*, 3 Bos. & P. 335, where an instrument "payable in Paris, or, at choice of bearer, at Union Bank in Dover, or at payee's usual place of residence in London, according to the course of exchange upon Paris," was declared on, and treated as a promissory note. Here is most deplorable uncertainty. Probably, the greater number of cases deny the negotiability of such instruments. And, if the weight of authority were to be determined by the number of cases, no doubt it would be found to be on the negative side of the question. But such is not the true method of determining the preponderance. It becomes our duty, then, to try and untangle this maze, and solve the puzzle upon principle, in the light of the better-reasoned cases.

"A bill of exchange is an open letter by one person to a second, directing him in effect to pay absolutely, and at all events, a certain sum of money, therein named, to a third person, or to any other to whom that third person may order it to be paid; or it may be payable to bearer, and to the drawer himself." Daniel, Neg. Inst., section 27. And it is among the fundamentals that such an instrument must be certain as an engagement to pay, as to fact of payment, amount to be paid, and must be for payment of money only. One of the most essential elements in it is that it must be certain as to the amount to be paid. And this certainty must appear upon the face of the

paper, and not from anything *dehors* the instrument. The maxim, "*Id certum est quod certum reddi potest*," does not apply, except that the certainty required may be ascertained from the face of the paper. With these rules as our own guide, we think the agreement to pay a certain sum at a particular place, when the acceptor lives at a different one, "with exchange," introduces an uncertainty as to the amount to be paid, which destroys the character and negotiability of the instrument as a bill of exchange. If it were true that there was at all times a certain, definite, and unchangeable rate of exchange, then there would probably be no uncertainty in the instrument. But it is a fact well known to the business world that there is no such fixed and unchangeable rate. Indeed, the rate charged for exchange is ofttimes a financial barometer, indicative of the state of the money market. He who was an observer of the financial world during the year 1893 could not have failed to observe the varying rates charged for exchange during the panic which was upon us at that time. Moreover, it is well known that rates of exchange vary in the different localities, and ofttimes in the same locality. Here, then, an element of uncertainty is introduced into this bill of exchange, and the amount to be paid by the acceptor will never be known until he applies for his draft at such point as he may happen to be when the instrument is due. Again, neither the state of the money market, the condition of the bank and its account with its correspondent, nor the rate of exchange in the particular locality, can be determined until the time for payment arrives. In all the cases affirming the negotiability of instruments of this kind, these facts are practically conceded, and the only answer offered is, first, that a custom has lately grown up among banks to treat such instruments as negotiable, and that such custom should

be regarded and recognized.   It is sufficient to say, in
reply, that we have never understood that the custo-
mary understanding of the law, no matter how gen-
eral, changed the law itself.    There would be some
force in the position, if it appeared that there was a
uniform custom in the business to charge a fixed and
certain rate of exchange between all places, depending
simply upon the amount called for by the bill.    But
such is not the case.    It has also been said, second, that
the amount of exchange, when any is charged, is so
inconsiderable that such a provision ought not to
destroy the character of the instrument.    We cannot
lend our approval to this doctrine.    It is exceedingly
unsafe to permit innovations upon well-settled rules
of law.    To do so would lead to "evils we know not of."
We had better endure the hardships incident to a strict
construction of the rules applicable to commercial
paper, than tolerate an innovation which may lead to
untold evils.    It is of the utmost importance to the
business world that the fixed rules with reference to
commercial paper shall be preserved in their rigor and
integrity.    Another argument in support of the char-
acter and negotiability of such paper is that, when the
acceptor is called upon to pay exchange upon a partic-
ular place, it is no more, in effect, that a requirement
that the paper be paid at the place on which exchange
is to be paid.    But this is clearly unsound.    As said by
Mr. Justice Corliss in *Flagg v. School Dist., supra:*
"There is a marked difference, both to debtor and cred-
itor, with respect to the amount to be paid and received,
between cases where the paper is payable at one place,
with exchange on another, and cases where the paper
is payable, without exchange, at the last-named place.
Suppose, when the money is payable in this state, the
creditor wishes to use the money here.    He is doubly
benefited by the provision to pay here, with New York

exchange. Had the paper been payable in New York, without exchange, he might be compelled to pay exchange on some western point, to bring the money to this state. But, by having it paid here, he saves this sum, and, in addition, places in his pockets the amount of New York exchange paid him by the debtor. In times of great financial fright, like those through which we have been passing, the difference might be equal to a considerable sum. Nor is the effect the same upon the debtor. Should his money be in New York, he must pay the cost of bringing it west, and also pay the creditor the further cost of sending it back, although the creditor may not desire it remitted, whereas, had the debt been payable in New York, without exchange, he would have saved both of these items of exchange." We have, as we think, sufficiently answered all arguments, worthy of the name, made in support of the negotiability of such instruments. And, while we do not think them utterly devoid of strength, our judgment is, that they are untenable.

The decisions cited in support of the negotiability of such instruments are all based upon one or the other of the arguments we have attempted to answer. Some of them, however, we do not regard as authorities for the position they are cited to sustain. In the case in 9 Mich. there was a strong dissenting opinion by Justice Campbell, which we regard as stating the better law. In addition to this, the note in that case was dated in New York, and payable in New York, "with current exchange on New York." The words quoted were superfluous and surplusage. The court correctly decided the case, but, to our minds, gave a wrong reason. See *Hill v. Todd,* 29 Ill. 101, and *Clauser v. Stone,* 29 Ill. 114, which are directly in point on this last proposition. The case in 15 Mich. simply followed the one in 9 Mich.,

the opinion being written by the Justice Campbell who dissented in the first case.    In a much later case (Bank v. Purdy [Mich.], 22 N. W. Rep. 93), that court said: "The modern tendency to interpolate into such instruments engagements and stipulations not recognized by the law merchant, affecting certainty as to amount due, * * * * should be discountenanced, and held to destroy their negotiability, and deprive them of the character of promissory notes.    And they should be relegated to the domain of ordinary contracts."    The remarks of the court in the Wisconsin cases were clearly obiter, and so recognized in the Morgan-Edwards Case.    Neither case is an authority on the question.    The case in 4 Biss. (Fed. Cas. No. 1,783) is, in its arguments and illustrations, so manifestly unsound that no further attention need be given it. The case from Minnesota, in 55 N. W. Rep. 15, is the only one, to which we have access, which is supported by argument of any force.    But we cannot accede to the doctrine there announced.    It is said, however, by appellant's counsel, that we have recognized the negotiability of such instruments in the cases of Sperry v. Horr, 32 Iowa, 184, and First Nat. Bank v. Dubuque S. W. Ry. Co., 52 Iowa, 378, 3 N. W. Rep. 395.    We do not think so.    In the first case, we call attention to the conflict in the authorities on the subject, and expressly refrain from deciding the question.    In the last case cited, the question was neither involved nor decided.

It is further insisted that the clause is similar in its nature to a stipulation to pay an attorney's fees for collection, and that, as we have held a note with such a stipulation negotiable, a fortiori, should we hold the bill in suit negotiable.    The distinction between the two provisions is accurately pointed out in the case of Sperry v. Horr, supra.    In that case it is said: "The agreement for the payment of attorney fees in no sense

increased the amount of money which was payable when the notes fell due, and we are unable to see that it rendered that amount uncertain in the least degree. It simply imposed an additional liability in case suit should be brought, and such liability did not become absolute until an action was instituted. This agreement relates rather to the remedy upon the note, if a legal remedy be pursued to enforce its collection, than to the sum the maker is bound to pay." See, also, *Bank v. Marsh*, 89 Iowa, 273, 56 N. W. Rep. 458. The distinction between such an agreement and one to pay a certain amount, with exchange, is so marked that we need not do more than rest upon this quotation.

Lastly, it is insisted that our statutes have changed the rules of the law merchant. The sections of the Code relied upon are as follows:

Section 2082: "Notes in writing made and signed by any person promising to pay to another person or his order or bearer, or to bearer only, any sum of money, are negotiable by endorsement or delivery in the same manner as inland bills of exchange according to the custom of merchants."

Section 2085: "Instruments by which the maker promises to pay a sum of money in property or labor, or to pay or deliver property or labor, or acknowledges property or labor, or money to be due to another, are negotiable instruments, with all the incidents of negotiability, whenever it is manifest from their terms that such was the intent of the maker; but the use of the technical words 'order' or 'bearer,' alone, will not manifest such intent."

The first section is a re-enactment of the statute of Anne, before referred to, giving to promissory notes the same character as bills of exchange under the law merchant. It has no application to this case. Section 2085 has been in force ever since 1851, and it has

uniformly been held that a bill of exchange or promissory note, to be such, and to be possessed of the attributes of negotiability under the law merchant, must be certain as to payor, payee, amount, time, and place of payment. *Smith v. Marland*, 59 Iowa, 649, 13 N. W. Rep. 852; *Gordon v. Anderson*, 83 Iowa, 224, 49 N. W. Rep. 86; *Bank v. Taylor*, 67 Iowa, 572, 25 N. W. Rep. 810; *Woodbury v. Roberts*, 59 Iowa, 348, 13 N. W. Rep. 312; *Hollen v. Davis*, 59 Iowa, 444, 13 N. W. Rep. 413; *Miller v. Poage*, 56 Iowa, 96, 8 N. W. Rep. 799. So it has been held that a note payable "in currency," or "in current funds," is not *prima facie* negotiable. *Rindskoff v. Barrett*, 11 Iowa, 172; *Huse v. Hamblin*, 29 Iowa, 501. So we think that, even, should it be held that this statute is applicable to the case, yet certainty in amount is essential to establish the character and negotiability of a bill or note. Such a holding in no way conflicts with the rule announced in the case of *Iron Works v. Cuppy*, 41 Iowa, 104. It may further be added, in this connection, that if the words "with exchange" appearing in the instrument in suit, destroy its negotiability under the law merchant, then there is nothing to indicate that it was the intention of the defendant to make it negotiable, except the use of the word "order;" and this, under the statute, will not, alone, manifest such intention. The use of the words "value received" is not indicative of an intention on the part of the acceptor to make the bill negotiable. Lord Denman said in the case of *Hatch v. Trayes*, 11 Adol. & E. 702, "The words 'value received' express only what the law must imply from the nature of the instrument, and the relations of the parties apparent upon it." See, also, *Osgood v. Bringhoff*, 32 Iowa, 265; Daniel, Neg. Inst. section 108; *Townsend v. Derby*, 3 Metc. (Mass.), 363; *Arnold v. Sprague*, 34 Vt. 40; *People v. McDermott*, 8 Cal. 288; *Hughes v.*

*Wheeler*, 8 Cow. 77; 1 Pars. Notes & B. 193.   See, also, as directly in point, *McCartney v. Smalley*, 11 Iowa, 85, and *Peddicord v. Whittam*, 9 Iowa, 471.   "Where a bill is drawn payable to the order of a third person, the use of the words 'value received,' in the body of the bill, is ambiguous.   They may mean either value received by the acceptor from the drawer, or by the drawer from the payee.   But the latter is the more natural and probable construction, for, as said by Lord Ellenborrough, it is more natural 'that the party who draws the bill should inform the drawee of a fact which he does not know, than one of which he must be well aware.'"   Daniel, Neg. Inst. section 108.

We think the lower court was right, both in its findings of fact and conclusions of law.—*Affirmed.*