Nicely *et al. v.* Commercial Bank of Union City.

Filed February 18, 1896.

No. 1,933.

NICELY ET AL. *v.* COMMERCIAL BANK OF UNION CITY.

PROMISSORY NOTE.—*Law Merchant.*—The essential requisites of a promissory note to be negotiable by the law merchant are: (1) a date; (2) an unconditional promise to pay money; (3) a fixed time for payment; (4) a definite amount to be paid; (5) a place where payment is to be made.

SAME.—*Negotiability Of.—Cost of Collection.*—The stipulation in a promissory note to pay "cost of collection," does not destroy its negotiability.

SAME.—*Negotiability Of.—Exchange.*—The stipulation in a promis-sory note, providing for "exchange," renders the sum to be paid indefinite and uncertain, hence the obligation is non-negotiable, under the law merchant.

From the Randolph Circuit Court.

*T. Shockney, J. S. Engle,* and *W. G. Parry,* for appellants.

*J. W. Thompson, J. Canaday,* and *F. C. Focht,* for appellee.

Ross, J.—The appellee sued the appellants upon the following written obligation, to-wit:
"$500.00.          "JANESVILLE, Wis., March 28, 1892.
"On the 1st of June, 1893, for value received, we, the undersigned, jointly and severally, promise to pay to the order of Galbraith Bros., of Janesville, Wis., the sum of five hundred dollars, negotiable and payable at the Commercial Bank, Union City, Indiana, with exchange and cost of collection, with interest at 8 per cent. per annum, payable annually from date.

| "D. J. NICELY, | T. J. MASON, JR., |
|---|---|
| JESSE A. BAKER, | JOHN PUDERBAUGH, |
| A. J. BENNETT, | D. A. PUDERBAUGH, |
| JAMES L. DOWNING, | S. D. FULKS, |
| | SIMON SNYDER." |

The complaint is in the usual form, upon an ordinary promissory note, with the additional allegations "that said note was duly transferred to this plaintiff by the written endorsement on the back thereof, for a valuable consideration, and before maturity of said note, and in due and regular course of business; and that at the time this plaintiff purchased and so took the assignment of said note, it had no notice or knowledge of any defense to the same, and that it had no notice or knowledge that the makers had, or claimed to have, any defense to the same." And it is also averred that the note sued on "was made and executed at the said city of Union City, Indiana, where the same is payable, and was not, in truth and in fact, made at the city of Janesville, in the State of Wisconsin."

To the complaint the appellants filed an answer in three paragraphs, each of which alleged a failure of consideration. Demurrers were sustained to those answers, and the appellants abiding the ruling on demurrers, and refusing to answer further, judgment was rendered in favor of the appellee.

It is conceded by the parties, both the appellants and the appellee, that the only question presented on this appeal is whether or not the note sued on is governed by the law merchant.

The appellants contend that "the note in suit is not governed by the law merchant, because the clause in the note, 'with exchange and cost of collection', makes it indefinite and uncertain as to amount when due."

Ordinarily, the essential requisites of a promissory note, to be negotiable by the law merchant, are: (1) a date; (2) an unconditional promise to pay money; (3) a fixed time for payment; (4) a definite amount to be paid; (5) a place where payment is to be made.

It is conceded, by counsel for the appellants, that it is apparently settled, not only in this State, but in many other jurisdictions, that provisions waiving the benefit of valuation or appraisement and exemption laws, and for the payment of attorney's fees, do not destroy their negotiability by rendering the amount to be paid uncertain, because if the note is paid promptly at maturity, the contingency upon which they would arise does not become effective. But it is insisted that the agreement in the note sued upon to pay "exchange and cost of collection" does not depend upon the failure of the maker to pay, but that they are as much a part of his original promise to pay as the sum of money therein designated, and that, as the amount of "exchange and cost of collection" are

not stated, the obligation is uncertain as to the amount to be paid.

We think it is clear that the stipulation to pay "cost of collection" does not render the promise as to the amount uncertain, because no costs for collection could accrue if the note was paid promptly at maturity. The only stipulation which we are to consider in determining whether the note sued on is indefinite or uncertain as to the amount to be paid, is that for the payment of "exchange."

Many cases hold that even though the principal sum to be paid is certain and fixed, if the obligation provides for "exchange on New York," that renders the sum to be paid indefinite and uncertain, hence the obligation is non-negotiable under the law merchant.

*Lowe* v. *Bliss*, 24 Ill. 168; *Cazet* v. *Hirk*, 4 Allen N. B. 543; *Nash* v. *Gibbon*, 4 Allen N. B. 479; *Read* v. *McNulty*, 12 Rich. L. 445; *Carroll County Sav. Bank* v. *Strother*, 6 S. E. Rep. 313; *Fitzharris* v. *Leggatt*, 10 Mo. App. 527; *Flagg* v. *School Dist.*, etc., 58 N. W. Rep. 499; *Windsor Savings Bank* v. *McMahon*, 38 Fed. Rep. 283, and the following cases hold that a stipulation in the obligation providing for "exchange on New York" does not destroy the negotiability of the obligation. *Smith* v. *Kendall*, 9 Mich. 240; *Johnson* v. *Frisbie*, 15 Mich. 286; *Leggett* v. *Jones*, 10 Wis. 3; *Hastings* v. *Thompson*, 54 Minn. 184, 55 N. W. Rep. 968.

In *Philadelphia Bank* v. *Newkirk* (Pa.), 2 Miles 442; *Saxton* v. *Stevenson*, 23 Up. C. C. P. 503; *Hughitt* v. *Johnson*, 28 Fed. Rep. 865; *Culbertson* v. *Nelson* (Ia.), 61 N. W. Rep. 854, it was held that the mere stipulation "with exchange" destroyed the negotiability of the obligation.

On the other hand, in *Hill* v. *Todd*, 29 Ill. 101; *Clauser* v. *Stone*, 29 Ill. 114; *Bullock* v. *Taylor*,

39 Mich. 137; *Orr* v. *Hopkins*, 3 New Mex. 45, it was held that a stipulation "with exchange" does not destroy the negotiability of the obligation. Daniels, in his work on Negotiable Instruments, section 54, says: "If there be added to the amount 'with current exchange on another place,' the commercial character of the paper is not impaired, as that is capable of definite ascertainment. Exchange is an incident to bills for the transmission of money from place to place. Its nature and effect are well understood in the commercial world, and merchants having occasion to use their funds at their place of business, sometimes make the currency at that point the standard of payments made to them by their customers at a different point. Exchange preserves the equivalence of amounts in value, and does not introduce such an element of uncertainty as destroys the negotiability of the bill or note which embodies it in its terms." And the same author, at section 54, says: "It has been urged that an instrument payable 'with exchange' on another place, cannot be regarded as a bill or note: (1) because the fluctuations in the rate of exchange make it impossible to ascertain the amount payable when the bill is issued; and (2) because if this were not so, evidence *dehors* the instrument would be necessary to ascertain the amount due at maturity. The words of the rulings as to the requisites of negotiable instruments would lead to these conclusions, and the doctrine of the text has been declared 'a slight modification of the general rule.' But reply may be made that instruments payable with exchange have been generally treated as commercial instruments by the business world and the courts;" and, "the rule requiring precision in the amount of negotiable instruments applies rather to principal amount than to the

ancillary and incidental additions of interest or exchange."

Randolph, in his work on Commercial Paper, section 200, in speaking of the stipulations which do not affect the negotiability of notes or bills, says: "Another common addition, not in general affecting the negotiability of a bill of exchange, is a provision for *exchange* between the place of drawing and the place of payment."

In the case of *Hastings* v. *Thompson, supra,* the negotiability of notes containing a provision "for current exchange," was under consideration, and the court said: "The law merchant, including the law of negotiable paper, is founded upon, and is the creature of, commercial usage and custom. Custom and usage have really made the law, and courts, in their decisions, merely declare it. The law of negotiable paper is not only founded upon commercial usage, but is designed to be in aid of trade and commerce.    Its rules should, therefore, be construed with reference to and in harmony with general business usages, and, as far as possible, with the common understanding in commercial circles.    This was the very purpose of the statute of Anne placing promissory notes on the same footing as bills of exchange, and thus setting at rest a question upon which there has been some difference of opinion in the courts.    Now, we think we are safe in saying, and justified in taking notice of the fact, that if bankers or other business men accustomed to dealing in commercial paper were asked whether such an instrument is a promissory note, and whether they would deal with it as negotiable paper, the answer would, in almost every instance, be unhesitatingly in the affirmative.    We have no doubt but that this is the way in which such paper is generally looked upon and treated in commercial and other business

Nicely *et al. v.* Commercial Bank of Union City.

circles; and, if so, the court should, as far as possible, make their decisions conform to this general custom and understanding. We recognize the importance of simplicity and certainty in the terms and conditions of commercial paper; and appreciate the objections to permitting it to be loaded down with unnecessary 'luggage,' but we cannot see, under all the circumstances, and especially in view of what we believe to be the commercial usage, that any practical evil will result from permitting the addition of such a provision for the payment of current exchange on the principal amount. Nor are we disposed, as a rule, to extend the quality of negotiable paper to contracts for the payment of money beyond the strict limits of the already established rules of law; but to exclude from that category, paper like that under consideration, would be to exclude the very class of paper which ought to be held negotiable, if any promissory notes ought to be so held, paper given and taken in commercial transactions, properly so called; for rarely, if ever, would a provision for exchange be incorporated in any other."

But, in *Culbertson* v. *Nelson, supra,* the court, after reviewing the cases bearing upon the negotiability of promissory notes which contain provision for the payment of exchange, says:

" 'A bill of exchange is an open letter by one person to a second, directing him, in effect, to pay absolutely, and at all events, a certain sum of money, therein named, to a third person, or to any other to whom that third person may order it to be paid; or it may be payable to a bearer, and to the drawer himself.' Dan. Neg. Inst., section 27. And it is among the fundamentals that such an instrument must be certain as an engagement to pay, as to fact of payment, amount to be paid, and must be for payment of money only.

One of the most essential elements in it is that it must be certain as to the amount to be paid. And this certainty must appear upon the face of the paper, and not from anything *dehors* the instrument. The maxim, '*Id certum est quod certum reddi potest,*' does not apply, except the certainty required may be ascertained from the face of the paper. With these rules as our own guide, we think the agreement to pay a certain sum at a particular place, when the acceptor lives at a different one, 'with exchange,' introduces an uncertainty as to the amount to be paid, which destroys the character of the negotiability of the instrument as a bill of exchange. If it were true that there was, at all times, a definite and unchangeable rate of exchange, then there would probably be no uncertainty in the instrument. But it is a fact well known to the business world that there is no such fixed and unchangeable rate. Indeed, the rate charged for exchange is ofttimes a financial barometer, indicative of the state of the money market. He who was an observer of the financial world during the year 1893, could not have failed to observe the varying rates charged for exchange during the panic which was upon us at that time. Moreover, it is well known that rates of exchange vary in the different localities, and ofttimes in the same locality. Here, then, an element of uncertainty is introduced into this bill of exchange, and the amount to be paid by the acceptor will never be known until he applies for his draft, at such point as he may happen to be, when the instrument is due. Again, neither the state of the money market, condition of the bank and its account with the correspondent, nor the rate of exchange in the particular locality, can be determined until the time for payment arrives. In all the cases affirming the negotiability of instruments of this kind, these facts are practically

conceded, and the only answer offered is, first, that a custom has lately grown up among banks to treat such instruments as negotiable, and that such custom should be regarded and recognized. It is sufficient to say, in reply, that we have never understood that the customary understanding of the law, no matter how general, changed the law itself. There would be some force in the position, if it appeared that there was a uniform custom in the business to charge a fixed and certain rate of exchange between all places, depending simply upon the amount called for by the bill. But such is not the case. It has also been said, second, that the amount of exchange, when any is charged, is so inconsiderable that such a provision ought not to destroy the character of the instrument. We cannot lend our approval to this doctrine. It is exceedingly unsafe to permit innovations upon well-settled rules of law. To do so would lead to 'evils we know not of.' We had better endure the hardships incident to a strict construction of the rules applicable to commercial paper, than tolerate an innovation which may lead to untold evils. It is of the utmost importance to the business world that the fixed rules with reference to commercial paper shall be preserved in their rigor and integrity. Another argument in support of the character and negotiability of such paper is that, when the acceptor is called upon to pay exchange upon a particular place, it is no more in effect, than a requirement that the paper be paid at the place on which the exchange is, to be paid. But this is clearly unsound. As said by Mr. Justice Corliss, in *Flagg* v. *School Dist. No. 70, supra,* 'There is a marked difference, both to debtor and creditor, with respect to the amount to be paid and received, between cases where the paper is payable at one place, with exchange on another, and cases where the paper is payable, without exchange, at the last

named place. Suppose, when the money is payable in this State, the creditor wishes to use the money here. He is doubly benefited by the provision to pay here, with New York exchange. Had the paper been payable in New York, without exchange, he might be compelled to pay exchange on some western point, to bring the money to this State. But, by having it paid here, he saves this sum, and, in addition, places in his pocket the amount of New York exchange paid him by the debtor. In times of great financial fright, like those through which we have been passing, the difference might be equal to a considerable sum. Nor is the effect the same upon the debtor. Should his money be in New York, he must pay the cost of bringing it west, and also pay the creditor the further cost of sending it back, although the creditor may not desire it remitted, whereas, had the debt been payable in New York, without exchange, he would have saved both of these items of exchange.' We have, as we think, sufficiently answered all arguments, worthy of the name, made in support of the negotiability of such instruments. And, while we do not think them utterly devoid of strength, our judgment is, they are untenable."

And, in the case of *Windsor Sav. Bank* v. *McMahan*, *supra*, the court says: "The contract evidenced by the note binds the maker thereof to pay the installments of interest and principal, with exchange on New York, and the latter provision is just as much a part of the contract as are the provisions touching the principal sum and interest. Resolving the contract into its several parts, we find it to be a contract for the payment of the principal sum of $14,000.00 in five years from date, for the payment of $490.00 every six months as interest, and for the payment on each installment of interest, and also on the principal sum when paid, of

the current rate of exchange between Council Bluffs, Iowa, and New York. The party is bound to pay this current rate of exchange, as a part of the contract. The amount thereof is left wholly dependent upon what rates may be when the several payments come due, and there is no legal or business rule by which the amounts may be ascertained until the day of payment arrives. It is difficult to conceive of any other provision that could have been incorporated into this note that would have rendered the amount to be paid more uncertain than this one touching the payment of exchange. True, the fluctuations in the rate of exchange may not have been very great, yet this could not have been foreseen with certainty when the note was executed. When the note was signed it was impossible to know whether the rate of exchange to be paid upon the principal sum when it matured five years thereafter, would be one-tenth of one per cent. or one per cent. Therefore it is clear that, unless we abandon the rule of requiring certainty in the amount to be paid at maturity as an essential element in negotiable paper, this note cannot be held negotiable under the principles of the law merchant. Counsel cite a number of cases wherein it has been held that provisions waiving the benefit of appraisement or exemption laws, or for the payment of attorney's fee and the like, do not destroy the negotiability of the note containing them. These provisions do not affect or render uncertain the amount to be paid at the maturity of the paper. If the note is promptly paid at maturity, these provisions do not come into effect. They are intended to define the rights of the parties in case the note is not paid, and the holder is obliged to resort to legal means for the collection thereof. They are held to be provisions outside the contract of payment of the note, and not affecting it. In the case at

bar, the obligation to pay exchange is part of the contract of payment, and cannot be separated therefrom. When each payment of interest matured, as well as when the principal came due, the maker of the note was bound to pay the amount of exchange according to the then current rate, as well as the amounts of the interest and principal. Paper, to be negotiable under the law merchant, must define by its terms what the obligation of the maker is, so that, as it passes from hand to hand in the business world, it may be ascertainable from the face of the instrument what is demandable from the maker. If there inheres in the contract of payment an element of uncertainty of such a nature that, as each payment is made, it is necessary, in order to determine the sum that must be paid to fully discharge the contract, to make inquiry touching an extrinsic fact, and ascertain by such inquiry what the rate of exchange is at a given point between that place and New York, it certainly seems that such an instrument is not a 'courier without luggage,' but, on the contrary, is hampered by the absolute necessity, imposed by its own terms on the maker, of ascertaining, as each payment matures, what the exchange upon the interest or principal amounts to at the rate then prevailing at the place of payment."

While we are impressed with the reasoning contained in many of the cases cited, wherein it is held that promissory notes containing stipulations of this character should be held to be negotiable, if those who deal therein accept them as such, that the law merchant is simply the general custom, accepted and acted upon by common consent of those trading and doing business together; so, if paper passes from hand to hand, in the general routine of business, and is accepted as negotiable, the law should recognize it as such; nevertheless, we are bound to take notice of the

fact that the negotiability of such obligations is.quite often disputed, and, when questioned, the holdings of the courts as to their negotiability are inharmonious. The line of cases holding that the provision "with exchange" introduces into the obligation an element of uncertainty which destroys its negotiability, seems to meet the approval of at least a majority of this court; and, inasmuch as we have no precedents on the question in this State, we will follow that line of the adjudications.

The judgment is, therefore, reversed, with instructions to overrule the demurrers to the answers.

Filed June 18, 1896.