Nicely *et al. v.* The Winnebago National Bank of Rockford, Illinois.

---

NICELY ET AL. *v.* THE WINNEBAGO NATIONAL BANK OF ROCKFORD, ILLINOIS.

[No. 2,192.    Filed June 8, 1897.]

PROMISSORY NOTE.—*Negotiability.*—*Stipulation to Pay Cost of Collection.*—The stipulation in a promissory note to pay "cost of collection," does not destroy its negotiability.  *pp. 33, 34.*
SAME.—*Negotiability.*—*Stipulation to Pay Exchange.*—The stipulation in a promissory note, providing for "exchange," renders the sum to be paid indefinite and uncertain, hence the obligation is nonnegotiable under the law merchant.  *pp. 33–41.*

From the Randolph Circuit Court. *Reversed.*

*Theo. Shockney, J. A. Shockney, J. S. Engle* and *W. G. Parry,* for appellants.

*W. W. Canada* and *F. S. Caldwell,* for appellee.

WILEY, C. J.—March 28, 1892, the appellants executed a series of three notes for five hundred dollars each, payable to Galbraith Bros., identical in form and substance, except as to date of payment. Two of the notes were assigned to appellee before maturity for a valuable consideration, and upon said notes appellee sued appellants and recovered judgment for $1,302.00. It is sufficient to set out in this opinion a copy of one of the notes sued upon, and it is as follows:
"$500.00.        "Janesville, Wis., 28th March,1892.

"On June 1, 1894, for value received, we, the undersigned, jointly and severally promise to pay to the order of Galbraith Bros., of Janesville, Wis., the sum of five hundred dollars.  Negotiable and payable at Commercial Bank, Union City, Indiana, with exchange and costs of collection, with interest at 8 per cent. per annum, payable annually from date."

The complaint was in the usual form of an action upon a promissory note, with the additional averment "that said note was duly transferred to this plaintiff by the written endorsement on the back thereof, for a valuable consideration, and before maturity of said note, and in due and regular course of business, and that at the time this plaintiff purchased and so took the assignment of said note, it had no notice or knowledge of any defense to the same, and that it had no notice or knowledge that the makers had or claimed to have any defense to the same."  The complaint further avers that while the note, upon its face, purports to have been executed at Janesville, Wisconsin, it was in fact executed at Union City, Randolph county, Indiana.

The appellants filed an answer in six paragraphs, to the first, second, and third of which a demurrer was sustained, and they excepted.  The ruling of the court in sustaining the demurrer to the first, second, and third paragraphs of answer and in overruling appellants' motion for a new trial are the only errors assigned.

The assignment of error calling in review the action of the court in overruling the motion for a new trial will not be considered by us, by reason of the failure of appellants to discuss it; and this leaves but one question for our decision.

The notes in suit were given in part payment for a stallion, purchased of Galbraith Bros., of Janesville,

Wisconsin, expressly for breeding purposes. At the time of the execution of the notes, Galbraith Bros., the original payees, gave to the appellants a written guarantee that the horse for which the notes were given was "a reasonably sure foal getter with careful handling;" and in case he proved to be otherwise, they agreed to furnish appellants another imported stallion of equal value without further charge, on the return to them of said horse in as good health and condition as when sold.

The first, second, and third paragraphs of appellants' answer set up facts sufficient to constitute a breach of the warranty or guaranty, in that the horse was not a reasonably sure foal getter with careful handling, and that he was worthless for breeding purposes, and that by reason thereof there was a total failure of consideration for the notes sued upon. These paragraphs of answer each further aver that appellants offered to return the horse to Galbraith Bros., and demanded of them to furnish them another horse according to the terms of their guarantee and contract, but that they refused to accept the horse, and wholly failed to furnish them another. These paragraphs of answer are very lengthy, and it would subserve no useful purpose to quote from them at any great length.

Evidently the demurrer was sustained by the trial court on the ground that the notes sued on were negotiable instruments by the law merchant, as inland bills of exchange, and as they passed to the appellee by assignment before maturity and for a valuable consideration, a failure of consideration in the hands of an innocent purchaser constituted no defense.

The appellee has not favored us with any brief; but the appellants insist that the notes sued on are not negotiable by the law merchant, by reason of the

clause in them "with exchange and costs of collection," and this is the only question for decision.

We are clearly of the opinion that the averments of each of the paragraphs of answer under consideration were sufficient to constitute a defense to the notes sued upon on the ground that the consideration had wholly failed, and this defense is available here against the appellee if the notes are nonnegotiable.

A promissory note is an open promise in writing by one person to pay another therein named, or to his order or to bearer, a specified sum of money absolutely and at all events. Daniel on Negotiable Instruments, section 28.

A promissory note to become negotiable by the law merchant must possess at least five essential requisites. First, it must be an open promise for the payment of money; second, it must contain a certain, definite and fixed promise; third, it must be payable unconditionally and at all events; fourth, the amount to be paid, the date and place of payment must be certain; and fifth, the instrument must be delivered. Daniel on Negotiable Instruments, sections 31, 35, 41, 53, and 63.

If the notes sued upon in this case are wanting in either of these essential requisites, it removes them from the class of negotiable instruments, and leaves them subject to any defense the makers would have against the original payees.

We think it clear that the clause in the notes "and costs of collection" does not destroy the negotiability of the instruments. The great weight of authority is that notes that waive benefit of valuation, appraisement, and exemption laws, and provide for payment of attorney's fees, do not destroy their negotiability by rendering the amount to be paid uncertain, for, as was

said in *Nicely* v. *Commercial Bank of Union City,* 15 Ind. App. 563, "Because if the note is paid promptly at maturity the contingency upon which they would arise does not become effective."

The expression, or clause, in the notes in suit "and costs of collection" must be regarded as surplusage, and not destructive of the negotiability of the notes sued on, for the reason that no costs of collection could accrue if the notes had been paid when due.

The promise or obligation in a promissory note to pay attorney's fees and costs of collection, presents an entirely different proposition than an obligation to pay "with exchange," because it does not change or make uncertain or indefinite the amount the payer has agreed to pay at maturity. Such conditions in a note only go so far as to provide for a contingency arising upon default in payment.

Speaking of the class of cases holding that a promise to pay attorney's fees does not destroy the negotiability of a note, Mr. Daniel says: "These cases consider that the stipulation is valid because it is an indemnification assured by the maker against the consequences of his own act, for, unless in default, he will not have to pay the additional amount; that it is consonant with public policy because it adds to the value of the paper, has a tendency to lower the rate of discount, * * * and that it does not impair the negotiability of the instrument, for the reasons: That the sum to be paid at maturity is certain; that commercial paper is expected to be paid promptly; that if so paid no element of uncertainty enters into the contract," etc. Daniel on Negotiable Instruments, section 62, and authorities there cited.

This leaves the sole question for our consideration, does the clause in the notes "with exchange" destroy their negotiability?

In *Hughitt* v. *Johnson*, 28 Fed. 865, in passing upon the question as to whether a clause in a note providing for payment with exchange destroyed its negotiability, Justice Brewer said: "Now this is a stipulation which affects the amount to be paid, and the amount to be paid at maturity of the paper; and in that respect differs from those stipulations for the payment of attorney's fees in case of collection. * * * But this stipulation renders uncertain the amount to be paid at the maturity of the paper. It is * exchange, and what that exchange will be no one can tell."

*Culbertson* v. *Nelson*, 93 Iowa 187, 27 L. R. A. 222, is one of the leading cases upon the subject under consideration. Many authorities are collected and cited, and ably reviewed, and the conclusion reached is that a draft containing the words "with exchange" destroys its negotiability. It was held in that case that an instrument to be negotiable, among other things, must bear upon its face absolute certainty as to the amount to be paid, and where a draft or note is payable with exchange, as exchange is constantly fluctuating the amount to be paid at maturity is thereby rendered uncertain. So long as exchange is a matter of fluctuation or uncertainty, and so long as we subscribe to the doctrine that a negotiable instrument must be definite and certain as to the amount to be paid at maturity, it must be held, and we must adhere to the doctrine, that the words "with exchange" render such instrument nonnegotiable.

In Michigan it was held that a promissory note containing a stipulation to "pay all taxes assessed against the real estate and the mortgagee's interest therein described in a mortgage given to secure this note until it is paid," was not negotiable on the ground of uncertainty as to the amount to be paid. *Walker* v. *Thompson* (Mich.), 66 N. W. 584.

In *Windsor Savings Bank* v. *McMahon*, 38 Fed. 283, Judge Shiras said: "As already stated, the question is whether a note which provides that the several installments of interest as they come due, and also the principal sum, shall be paid at Council Bluffs, Iowa, with exchange in New York, is or is not negotiable according to the rules of the law merchant. Upon this question, the authorities are not in accord. The general rule has long been established that certainty in the sum to be paid is one of the elements essential to render notes negotiable. * * * If we adhere to the principle that, to render a note negotiable, the amount to be paid at maturity must be ascertainable from the face of the note, without resort to evidence *dehors* the instrument, we have a fixed and certain rule for guidance; but if we depart from this principle, doubt and uncertainty will arise as to the true character of notes and other like instruments for the payment of sums depending on contingencies. If there was a fixed rate of exchange established by law, or if the note provided the rate to be paid, so that from the face of the note it could be computed what the exchange would be, then the note itself would contain all the facts necessary to be known in order to ascertain the sum necessary to be paid at maturity in discharge of the obligation of the maker, and in that case there would not be any uncertainty in the amount of the note. * * *

"The contract evidenced by the note binds the maker thereof to pay the installments of interest and the principal, with exchange on New York; and the latter provision is just as much a part of the contract as are the provisions touching the principal sum and interest. Resolving the contract into its several parts, we find it to be a contract for the payment of the principal sum of $14,000.00 in five years from date; for the

payment of $490.00 every six months as interest, and for the payment on each installment of interest, and also on the principal sum when paid, of the current rate exchange between Council Bluffs, Iowa, and New York. The party is bound to pay this current rate of exchange, as a part of the contract. The amount thereof is left wholly dependent on what the rates may be when the several payments come due, and there is no legal or business rule by which the amounts can be ascertained until the date of payment arrives. It is difficult to conceive of any other provisions that could have been incorporated into this note that would have rendered the amounts to be paid more uncertain than this one touching the payment of exchange. True, the fluctuations in the rate of exchange may not have been very great; yet this could not have been foreseen with certainty when the note was executed. When the note was signed, it was impossible to know whether the rate of exchange to be paid upon the principal sum when it matured five years thereafter would be one-tenth of one per cent. or one per cent. Therefore, it is clear that, unless we abandon the rule of requiring certainty in the amount to be paid at maturity as an essential element in negotiable paper, this note cannot be held negotiable under the principles of the law merchant."

*Flagg* v. *School District, etc.* (N. D.), 58 N. W. 499, is a case strongly in point. Without quoting at length from the opinion, it is sufficient to say that it is directly held that an instrument providing for the payment of exchange in addition to principal and interest is not negotiable by the law merchant, and that one who purchases the same before maturity for value, and without any notice of any defense thereto, nevertheless takes it subject to the defense of want of consideration, good as between the original payer and payee.

From many cases holding that though the principal sum and interest to be paid is definite, fixed, and certain, if the instrument provides for the payment of exchange, etc., which render the sum to be paid at maturity uncertain, such provision destroys the negotiable character of the instrument, we cite the following: *Lowe* v. *Bliss*, 24 Ill. 168; *Bank* v. *Bynum*, 84 N. C. 24; *Carroll County Sav. Bank* v. *Strother*, 28 S. C., 504, 6 S. E. 313; *Fitzharris* v. *Leggatt*, 10 Mo. App. 527; *Nicely* v. *Bank*, 15 Ind. App. 563.

Recurring to *Culbertson* v. *Nelson, supra,* in reviewing the cases and discussing the principle under consideration, Deemer, J., speaking for the court, said: "It is among the fundamentals that such an instrument must be certain as an engagement to pay, as to fact of payment, amount to be paid, and must be for payment of money only. One of the most essential elements in it is that it must be certain as to the amount to be paid. And this certainty must appear upon the face of the paper, and not from anything *dehors* the instrument. The maxim, '*Id certum est quod certum reddi potest,*' does not apply, except the certainty required may be ascertained from the face of the paper. With these rules as our own guide, we think the agreement to pay a certain sum at a particular place, when the acceptor lives at a different one, 'with exchange,' introduces an uncertainty as to the amount to be paid, which destroys the character and the negotiability of the instrument as a bill of exchange. If it were true that there was at all times a certain, definite, and unchangeable rate of exchange, then there would probably be no uncertainty in the instrument. But it is a fact well known to the business world that there is no such fixed and unchangeable rate. Indeed, the rate charged for exchange is ofttimes a financial barometer, indicative of the state of

the money market. He who was an observer of the financial world during the year 1893 could not have failed to observe the varying rates charged for exchange during the panic which was upon us at that time. Moreover, it is well known that rates of exchange vary in the different localities and ofttimes in the same locality. Here, then, an element of uncertainty is introduced into this bill of exchange, and the amount to be paid by the acceptor will never be known until he applies for his draft at such point as he may happen to be when the instrument is due. Again, neither the state of the money market, the condition of the bank and its accounts with the correspondent, nor the rate of exchange in the particular locality, can be determined until the time for payment arrives. In all cases affirming the negotiability of instruments of this kind, these facts are practically conceded, and the only answer offered is, first, that a custom has lately grown up among banks to treat such instruments as negotiable, and that such custom should be regarded and recognized. It is sufficient to say, in reply, that we have never understood that the customary understanding of the law, no matter how general, changed the law itself. There would be some force in the position, if it appeared that there was a uniform custom in the business to charge a fixed and certain rate of exchange between all places, depending simply upon the amount called for by the bill. But such is not the case. It has also been said, second, that the amount of exchange, when any is charged, is so inconsiderable that such a provision ought not to destroy the character of the instrument. We cannot lend our approval to this doctrine. It is exceedingly unsafe to permit innovations upon well settled rules of law. To do so would lead to 'evils we know not of.' We had better endure the hardships incident to a strict con-

struction of the rules applicable to commercial paper, than tolerate an innovation which may lead to untold evils. It is of the utmost importance to the business world that the fixed rules with reference to commercial paper shall be preserved in their rigor and integrity. Another argument in support of the character and negotiability of such paper is that, when the acceptor is called upon to pay exchange upon a particular place, it is no more, in effect, than a requirement that the paper be paid at the place on which the exchange is to be paid. But this is clearly unsound. As said by Mr. Justice Corliss, in *Flagg* v *School District, supra:* 'There is a marked difference, both to debtor and creditor, with respect to the amount to be paid and received, between cases where the paper is payable at one place, with exchange on another, and cases where the paper is payable, without exchange, at the last named place. Suppose, when the money is payable in this state, the creditor wishes to use the money here. He is doubly benefitted by the provision to pay here with New York exchange. Had the paper been payable in New York without exchange, he might be compelled to pay exchange on some western point, to bring the money to this state. But, by having it paid here he saves this sum, and, in addition, places in his pockets the amount of New York exchange paid him by the debtor. In times of great financial fright, like those through which we have been passing, the difference might be equal to a considerable sum. Nor is the effect the same upon the debtor. Should his money be in New York, he must pay the cost of bringing it west, and also pay the creditor for further cost of sending it back, although the creditor may not desire it remitted, whereas, had the debt been payable in New York, without exchange, he would have saved both of these items of exchange.'

We have, as we think, sufficiently answered all arguments, worthy of the name, made in support of the negotiability of such instruments. And, while we do not think them utterly devoid of strength, our judgment is, that they are untenable."

While we are not forgetful of the fact that some of the courts have held, and upon apparently plausible grounds, that a promissory note or draft payable with exchange is negotiable by the law merchant, yet the views expressed and conclusions reached in the many cases we have cited seem to us to rest upon a firmer basis, and are supported by more substantial reason.

Negotiable paper which enters so largely into the commercial exchanges of the world, in the interest of business transactions, should bear upon its face no element of uncertainty or doubt. As was said in one case, it should be a "courier without luggage," and this it cannot be, unless upon its face it is freed from uncertainty. When it provides for the payment of any sum by way of exchange and does not provide for the rate or amount to be paid by its express terms, then the amount to be paid at maturity is uncertain and it becomes nonnegotiable.

Parsons on Notes and Bills, vol. 1, page 37, says: "There should be an entire certainty and precision as to the amount to be paid. The reason of this is especially obvious; for if the note is to represent money effectually, there must be no chance of mistake as to the amount of money of which it thus takes the place and performs the office. On this point, therefore, the cases are quite stringent. The same must be stated definitely and must not even be connected with any indefinite or uncertain sum."

It is to be regretted that upon a question which affects so largely the commercial interests of the country there is a diversity of opinion, and we indulge the

hope that the time is not far distant when the courts will universally adopt and fix a definite rule by which all may be guided. There seems to be good reason to support both contentions, but we think the great weight of authorities, and the better and safer doctrine is that the words "with exchange" render a promissory note nonnegotiable, and we must so hold.

It follows, as a result of this conclusion, that the court erred in sustaining the demurrer to the first, second, and third paragraphs of answer, and the judgment is reversed, with instructions to overrule the demurrer, and for further proceedings not inconsistent with this opinion.