**In the Matter of Paul Frederick SCHWARTZ and Soundra Sue Schwartz, Debtors/Appellants.**

**AUTO DRIVEWAY, INC., Plaintiff/Appellee,**

**v.**

**Paul Frederick SCHWARTZ and Soundra Sue Schwartz, Defendants/Appellants.**

**Bankruptcy No. 80–10843.
Adv. No. 81–1109.
Civ. No. F 85–320.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Oct. 21, 1985.

---

⊶6

Robert E. Grant, Shoaff, Parker & Keegan, Fort Wayne, Ind., for Auto Driveway, Inc.

Ralph R. Blume, Blume, Wyneken & Connelly, Fort Wayne, Ind. for debtors.

Howard B. Sandler, Beckman, Lawson, Sandler, Snyder & Federoff, Fort Wayne, Ind., Trustee.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on appeal from the bankruptcy court's order of June 25, 1985. The issue on appeal is whether Soundra Sue Schwartz can claim a homestead exemption on the proceeds of the trustee's sale of the debtors' residential real estate. For the following reasons, the decision of the bankruptcy court will be reversed.

The facts relevant to this case, as found by the bankruptcy court in its orders of February 15, 1985 and June 25, 1985 and a stipulation of fact signed by the parties and filed August 2, 1983 in the bankruptcy court, are as follows. The debtors, Paul Frederick Schwartz and Soundra Sue Schwartz, husband and wife, filed a joint petition in bankruptcy on September 29, 1980. One asset of their estate was residential real estate located at 127 South Cornell Circle ("property") in Fort Wayne, Indiana. The property was sold by the trustee on December 16, 1982, and netted proceeds of $15,958.92.

Auto Driveway, Inc. ("Auto") claimed the entire amount of the proceeds by virtue of a judgment lien on the property. The lien grew out of a judgment in the Adams County Circuit Court in 1980. In the state court proceedings, Auto sued the debtors for breach of an agency contract. In December, 1979, Auto obtained two orders of attachment on the property totaling $40,000.00. Judgment was entered in favor of Auto for $35,271.08 on July 17, 1980, and the Adams Circuit Court entered an execution in aid of the judgment that same day. The trustee instituted an adversary proceeding to avoid the judgment lien as preferential and subject to 11 U.S.C. § 547. In a compromise approved by the bankruptcy court on December 22, 1981, the judgment lien was allowed, but only to the extent of $20,000.00.

The debtors also claimed a share of the proceeds from the sale of the property, with Paul and Soundra each requesting a homestead exemption in the amount of Seven Thousand Five Hundred Dollars ($7,500.00). In its order of February 15, 1985, the bankruptcy court held that Paul's claim of exemption should be disallowed, but that Soundra should be entitled to an exemption, because "[a] judicial lien can be avoided to the extent that it impairs an

exemption to which the debtor is entitled," citing 11 U.S.C. § 522(f)(1). Auto objected, and filed a motion to reconsider. In its order of June 25, 1985, the bankruptcy court found that Soundra could not claim an exemption because a previous motion under § 522(f) to avoid the Auto lien to the extent of the exemption had been denied on the ground that it was filed two years after the bar date for filing such motions. In effect, the bankruptcy court ruled that Soundra waived her claim to exemption via § 522(f) by failing to assert it prior to the bar date. Soundra now appeals this ruling.

On appeal, the issue of Soundra's entitlement to an exemption does not turn on the application of § 522(f). Counsel for Auto recognized that there are in effect two possible ways to assert an exemption: to assert it in the underlying proceeding itself, § 522(b); and to assert it in the bankruptcy proceeding despite a waiver of the exemption in the underlying proceeding, § 522(f). While the bankruptcy court addressed this latter method, oral argument on appeal focused on the former. As counsel agreed, if Soundra successfully asserted the exemption in the underlying proceeding, then the tardiness of claiming the exemption via § 522(f) is irrelevant.

Under § 522(b), a state may choose to "opt-out" of the exemptions set forth in § 522(d) and limit debtors subject to its law to state law exemptions. Indiana has elected to opt-out, so that Indiana debtors may exempt from their estate only that property specified by Indiana law. I.C. 34–2–28–0.5. The court therefore looks to Indiana exemption law to determine whether Soundra successfully claimed the exemption.

The homestead exemption asserted here is set forth in I.C. 34–2–28–1. That section provides in pertinent part:

The following property of a debtor domiciled in the state of Indiana shall not be liable for levy or sale on execution or any other final process from a court, for any debt growing out of or founded upon a contract express or implied:

(a) Real estate or personal property constituting the personal or family resi-

dence of the debtor or a dependent of the debtor, or estate or rights therein or thereto of the value of not more than seven thousand five hundred dollars ($7,500).

In order to claim the exemption, the debtor must present an inventory of his property, and an affidavit attesting to the truth and completeness of the inventory to the sheriff or other officer seeking to enforce the writ of execution. I.C. 34–2–8–1.

As argued on appeal, the ability of Soundra to claim a homeowner's exemption under I.C. 34–2–28–1 depends on the time when Soundra was required to claim the exemption. Auto argues that the exemption had to be claimed after the orders of attachment issued in December, 1979 but before the final judgment in July, 1980. Because Soundra did not assert the exemption until she filed bankruptcy in September, 1980, Auto argues that Soundra waived her claim to the exemption. On the other hand, Soundra argues that she did not have to claim the exemption prior to judgment, so that her claim of the exemption in her schedules filed with her petition for bankruptcy adequately invoked the exemption, thereby entitling her to its benefits now.

The essence of Auto's argument is that the orders of attachment created a lien on the property, and this is the lien which Auto seeks to enforce in claiming all of the proceeds of the trustee's sale of the property. The court disagrees with this conclusion. Under Indiana law, attachment is governed by I.C. 34–1–11–1, et seq., and is regarded as "an ancillary, not original, form of action. The subsequent sale of attached property is dependent upon a final judgment in the main action in favor of the attaching party." *Transcontinental Credit Corp. v. Simkin,* 150 Ind.App. 666, 277 N.E.2d 374, 377 (1972). *See Whinery, Executrix v. Kozacik,* 216 Ind. 136, 22 N.E.2d 829 (1939); *Commercial Credit Corp. v. Ensley,* 136 Ind.App. 389, 199 N.E.2d 108, 109 (1964). It is designed to secure the payment of a prospective judgment in the main action. *Whinery; Ensley; Boyer v.*

*Meeks,* 88 Ind.App. 450, 164 N.E. 501 (1929); 3 I.L.E. Attachments, § 2. However,

> No lien created by the issuing and levy of an attachment under our statute can exist or have any force or effect after judgment has been rendered in the cause, in aid of which it has been issued, unless there is a special judgment or order of sale of the property attached, and a special execution.

*Lowry v. McGee,* 75 Ind. 508, 510 (1881). *See* 3 I.L.E. Attachments, § 63. Thus, an attachment lien is a temporary lien, designed to "freeze" a defendant's assets until judgment and a writ of execution issues. Once judgment is entered and a writ of execution issues, the attachment lien perishes, *Lowry,* and a judgment lien takes its place. *See Blake v. First Crown Financial Corp.,* 443 N.E.2d 871, 875 (Ind.App. 1983); *Deetz v. McGowan,* 403 N.E.2d 1160 (Ind.App.1980).

Therefore, what Auto seeks to enforce in bankruptcy is its judgment lien, and not an attachment lien. Soundra was not required to assert her exemption prior to judgment, as the lien which existed prior to judgment has been extinguished in favor of a judgment lien.

Several factors support the conclusion that the homestead exemption need not be asserted prior to judgment. First, the nature of the attachment lien itself suggests that there is nothing to claim exemption from, and little reason to justify its assertion prior to entry of a judgment. The attachment lien is temporary, designed to freeze the assets. It does not give the plaintiff a right to seize the property and sell it;[1] it merely acts to keep the property available for seizure in event of a judgment. Precisely because there is no judgment on the property, and no liability found against the defendant in the main action,

there is little reason to believe that an exemption need be asserted prior to judgment. Not all cases end in verdicts for the plaintiff; a defendant may not assert his homeowner's exemption for the justifiable reason that he believes it will not need to be invoked.

After judgment, however, the situation is dramatically different. The plaintiff has won, and seeks to sell off the defendant's property to obtain satisfaction of the judgment. Defendant's liability is no longer a mere possibility, but a proven legal conclusion. Now defendant's interest in protecting his property is present and compelling, and assertion of the homeowner's exemption is reasonable.

Second, assertion of an exemption prior to judgment may be impossible. Attachment is an *ex parte* proceeding; a writ can be obtained by filing the appropriate documents with the clerk of the court. I.C. 34–1–11–6. Other than the constructive notice obtained through plaintiff's filing of a lis pendens notice, a defendant may not even know his property has been attached. It would be most unfair to require a defendant to assert an exemption when he might not even be aware of the attachment on his property.

Third, and perhaps most important, the language of the homestead exemption itself suggests that it applies to post-judgment situations. I.C. 34–2–28–1 states that the property listed "shall not be liable for levy or sale *on execution or any other final process from a court ...*" (emphasis supplied). Execution is clearly a post-judgment process, and attachment can hardly be said to be "final process" as it comes prior to a judgment. The exemption can apply to attachment proceedings via I.C. 34–1–11–6, which allows the sheriff to seize property "not exempt from execution." Yet the post-judgment nature of the

---

1. The attachment statutes do allow for seizure of the property by the sheriff of the county where the property is located, but that appears to be designed more for the seizure of personal property, not real property. I.C. 34–1–11–10 provides that an order of attachment creates a lien on the property attached; I.C. 34–1–4–3 requires the sheriff to file a lis pendens notice of the attachment. This effectively freezes the property by creating an unmarketable title, thus obviating the need for an actual seizure of the property. Because the attached property in this case was real estate, the court analyzes the law of attachment as it would apply to real estate.

exemption's language indicates that it also applies to that time period after the attachment lien expires. The court therefore interprets the exemption as applying outside the attachment context, so that a defendant can claim the exemption regardless of whether he claimed it at the time of attachment.

Auto cites five cases to support its assertion that failure to claim the exemption prior to judgment waives the exemption: *Gregg v. State*, 151 Ind. 241, 51 N.E. 359 (1898); *Haas v. Shaw*, 91 Ind. 384 (1881); *Bates v. Spooner*, 45 Ind. 489, 493 (1874); *State ex rel. Biddinger v. Manly*, 15 Ind. 8 (1860); and *Wagner v. Barden*, 13 Ind.App. 571, 41 N.E. 1067 (1895). However, these cases are inapposite. They are very old, and involve a procedure known as bringing a "suit in attachment." Under this procedure, a plaintiff can attach a defendant's property and sue on the defendant's debt for the value of the property attached. In a sense, the attachment plaintiff sued the property for the debt owed, the classic definition of an *in rem* action, and a suit in attachment in effect converted an *in personam* action into an *in rem* action. *See Transcontinental Credit Corp. v. Simkin*, 150 Ind.App. 666, 277 N.E.2d 374, 377–80 (1972). Because a suit in attachment could effect a judgment ordering the property to be sold directly, these old cases required the attachment defendant to raise his exemption prior to judgment so that the issue of the exemption could be litigated, as the exemption would be a defense against seizure and sale in the proceeding. While it is unclear whether a suit in attachment could now pass constitutional muster, *see Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the court need not decide that issue because the underlying lawsuit here was not a suit in attachment. The order of attachment froze the debtors' assets until judgment could be entered, the modern view of attachment set forth above. The suit was against the debtors' personally, and not against the property. Thus, these old cases do not apply to the attachment at issue here because they cannot be read as positing a rule beyond the *in rem* action involved in those cases.

Two additional policy reasons justify finding these cases inapposite. First, the suit in attachment is a proceeding which brings the attachment itself before the court. The very nature of the suit gives the defendant the opportunity to raise an exemption to the seizure of his property. Here, however, no attachment proceeding was held in the Adams Circuit Court so as to give Soundra an opportunity to claim the privilege. It appears from the stipulated facts that Auto obtained two attachments in December, 1979, and only turned them over to the sheriff; no formal proceeding was sought or held. In fact, no proceeding was necessary to protect Auto's interest because of the nature of the property involved here. The attached property was real estate; I.C. 34–1–11–10 provides that the order of attachment created a lien on the property. Such a lien effectively prevents transfer of the real estate by creating a cloud on its title. Unlike personal property subject to an attachment lien, the real estate cannot be secreted away and sold, thereby making it unavailable for execution. The filing of the lis pendens notice was therefore sufficient to freeze the property. Yet because no attachment proceeding was held, and no attachment seizure attempted, it is difficult to see how Soundra could have raised the exemption in the attachment context or prior to judgment. It would be incongruous to require a claim of exemption, upon pain of forfeiting the exemption forever, in the context of a case with no formal proceeding to make that claim in.

Second, the temporary nature of an attachment lien suggests that any waiver of an exemption in the attachment context has no effect on exemptions available in other contexts. The homestead exemption in I.C. 34–2–28–1 states that it applies to "levy or sale on execution," thus providing for the exemption in a post-judgment context. The attachment lien expires at the time of judgment, and a judgment lien takes its place. Execution is the process whereby the judgment lien is in effect foreclosed, and the

defendant's property sold to satisfy the judgment. Auto was attempting to complete execution at the time bankruptcy was filed. By its terms, the exemption applies to execution, so that even if Soundra's failure to claim the exemption foreclosed her ability to claim it *as to attachment*, it did nothing to her ability to claim the exemption as to execution. In the context of executions, a debtor may claim his exemption any time before sale. *Broeker v. Morris*, 42 Ind.App. 417, 85 N.E. 982 (1908); *Stout v. Price*, 24 Ind.App. 360, 56 N.E. 857 (1900). Counsel for Auto conceded that Soundra's petition for bankruptcy satisfied all statutory requirements for claiming the exemption, and the petition occurred prior to the sale of the property.

Thus, the cases cited by Auto do not support the argument that a failure to claim the exemption prior to judgment constitutes a waiver of that exemption for execution and post-judgment proceedings. Soundra therefore had a right to claim the exemption, and did so in her petition for bankruptcy. She is therefore entitled to that exemption.[2]

The only issue remaining is the size of the exemption. Auto claims that the exemption applicable was for only Five Thousand Dollars ($5,000.00) because the statute setting forth the Seven Thousand Five Hundred Dollars ($7,500.00) exemption did not go into effect until April, 1980, well after the attachments issued. This argument is premised on the belief that it is the attachment lien which Auto seeks to enforce here, a premise specifically rejected above. Soundra asserts an exemption from execution, and that execution could not have issued prior to July 17, 1980, the date of the entry of the judgment. That date occurred well after the April 1, 1980 effective date of the amendments to I.C. 34–2–28–1 which raised the homestead exemption from five thousand to seven thousand five hundred dollars. Soundra is therefore entitled to a homestead exemption of Seven Thousand Five Hundred Dollars ($7,500.00).

For the reasons stated above, the bankruptcy court's order of June 25, 1985 is hereby REVERSED. The trustee is hereby ORDERED to pay Seven Thousand Five Hundred Dollars ($7,500.00) to Soundra Sue Schwartz out of the proceeds of the sale of the residential real estate located at 127 South Cornell Circle, Fort Wayne, Indiana, as the amount due her by virtue of her homestead exemption. The trustee is hereby ORDERED to pay the remainder of the proceeds to Auto Driveway, Inc. in partial satisfaction of its judgment lien against Soundra and Paul Schwartz.

---

2. One other aspect of the Adams Circuit Court judgment deserves comment. The court there entered judgment "on the attachments heretofore in effect in this action." It might be possible to read this as indicating that this was a "suit in attachment" or that this is a "special judgment" as described in *Lowry v. McGee*, which would allow the attachment lien to have an effect after judgment. Neither party could offer an explanation for this language at oral argument. The court interprets this language as only allowing Auto to proceed to execution on the property frozen by the attachments—in effect, aiding Auto's efforts to satisfy the judgment by naming the assets that can be used to satisfy it. The attachment lien still expired and the judgment lien was created. This language does *nothing more than facilitate this change of lien* by specifying the property subject to execution.